GRACE S. BAILEY, Indiv. and as Ex'x of the Estate of Weldon J. Bailey, Deceased, Plaintiff-Appellant, v. STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellee.

Third District   No. 3—86—0585

Opinion filed June 3, 1987.—Rehearing denied July 22, 1987.

Evan A. Strawn, of Bloomington, for appellant.

Reed, Armstrong, Gorman & Coffey, of Edwardsville (Stephen W. Thomson, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff appeals from judgment of the circuit court of Peoria County granting defendant insurer's motion for judgment on the pleadings. Defendant's motion was framed in the alternative, requesting that should its motion for judgment on the pleadings be denied, then plaintiff's complaint should be dismissed pursuant to either section 2—615 or section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619). The issues presented for our consideration are whether the trial court erred in denying plaintiff's motion to strike defendant's motion as a "hybrid" and whether the court erred in granting defendant's motion on the pleadings. We affirm.

Plaintiff and her husband, Weldon J. Bailey, deceased, were holders of an "underlying" State Farm Mutual automobile insurance policy and a State Farm Fire & Casualty Co. "success protector," or "excess," insurance policy. Both policies were in force prior to 1980. The underlying policy was renewable on a regular six-month basis, and the "excess" policy was renewable yearly. According to the pleadings, State Farm agent Tom Metzger represented both State Farm Mutual and State Farm Fire & Casualty Co.

On April 21, 1980, Weldon J. Bailey was fatally injured when the bicycle he was riding was struck by an uninsured motorist in a pickup truck. At that time, the uninsured motorist coverage limits of the underlying State Farm Mutual policy were $100,000/$300,000. These limits were equal to the bodily injury limits of the policy and were offered and accepted pursuant to section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755a, as amended by Pub. Act 81—1202, sec. 1, eff. March 1, 1980). They became effective on March 21, 1980, when that policy was last renewed prior to the accident. A copy of the "excess" policy in effect at the time of the accident appears in the record before us. It provides for $1 million of personal

liability insurance and $35,000 of uninsured motorist insurance. By its terms, uninsured motorist coverage would become payable under this latter policy only if coverage on the underlying policy were less than $35,000. The excess policy was issued on September 21, 1979. Plaintiff's claim for benefits on the State Farm Fire & Casualty policy following her husband's death was denied on the ground that the uninsured motorist coverage of the underlying policy exceeded the $35,000 limit of the excess policy.

Plaintiff initially filed a complaint for declaratory judgment in the circuit court of Madison County on December 5, 1980. Plaintiff charged that defendant had failed to offer uninsured motorist coverage in an amount equal to the personal liability coverage of the excess policy pursuant to section 143a of the Illinois Insurance Code, as amended, and sought a declaration that the uninsured motorist coverage in effect on April 21, 1980, was $1 million. That suit ultimately was voluntarily dismissed over defendant's objection, and the dismissal was affirmed on appeal. *Bailey v. State Farm Fire & Casualty Co.* (1985), 137 Ill. App. 3d 155, 484 N.E.2d 522.

Plaintiff's first amended complaint in this case was filed in the circuit court of Peoria County with leave of court on May 30, 1986. This complaint is predicated on an alleged duty owed by defendant on March 21, 1980, to offer $1 million worth of uninsured motorist coverage on the excess policy. It contains seven counts charging unjust enrichment, violation of section 143a of the Illinois Insurance Code, negligence, breach of insurer's duty of good faith and fair dealing, breach of fiduciary duty, common law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). In response to the complaint defendant filed its motion for judgment on the pleadings or to dismiss. Plaintiff resisted the motion both procedurally and on the merits. On August 4, 1986, the trial court heard the parties' motions and entered its order denying plaintiff's motion to strike, granting defendant's motion for judgment on the pleadings and denying as moot defendant's motion in the alternative to dismiss. This appeal followed.

■■ ■ In *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, our supreme court expressly disapproved the use of "hybrid" motions combining requests for summary judgment and dismissal for failure to state a cause of action. The practice of combining these and similar requests for summary disposition nonetheless persists. However, on appeal the practice generally is not held to be a basis for reversal in the absence of any showing of prejudice to the nonmovant. (See *Janes v. First Federal*

*Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605. See also *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 484 N.E.2d 841; *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60.) Moreover, the trial court's ruling on a challenge to the form of motions before it will not be disturbed on appeal unless a manifest abuse of discretion is shown.

■ In this case, the only factual matters added as a result of defendant's motion in the alternative are contained in a certified copy of the "success protector" policy, an exhibit which was required to be filed as a basis for plaintiff's complaint pursuant to section 2–606 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–606). Plaintiff would be hard-pressed to argue that defendant's reliance on the renewal date of the excess policy in support of its motion in the alternative impaired her ability to defend against the motion, since plaintiff's complaint contains reference to the policy by number and extensively quotes certain relevant portions of it. Under the circumstances, and having reviewed plaintiff's several arguments directed to the form of defendant's motion in the alternative, we find that plaintiff has failed to demonstrate any actual prejudice. Accordingly, we find no abuse of the trial court's discretion in denying plaintiff's motion to strike.

■ We turn next to plaintiff's arguments on the merits. In the trial court, defendant presented two arguments in support of its motion in the alternative. Defendant contended that it owed no duty to offer increased uninsured motorist coverage because the excess policy was not a motor vehicle policy as contemplated by section 143a of the Illinois Insurance Code, and because the amendment requiring an offer of increased coverage did not apply to the excess policy until it became renewable on September 21, 1980. The trial court's order granting judgment for defendant did not specify the basis for its holding. However, it is well established that the trial court's judgment will be affirmed on appeal if the record provides any basis for it. *Northern Trust Co. v. Winston* (1975), 32 Ill. App. 3d 199, 336 N.E.2d 543.

We find that the trial court's disposition here is supported on the ground that defendant owed no duty to offer increased uninsured motorist coverage pursuant to section 143a of the Illinois Insurance Code prior to the date of the accident for which plaintiff claimed benefits.

Plaintiff argues that the uninsured motorist coverage under the excess policy became illusory as of March 21, 1980, when her uninsured motorist coverage on the underlying policy was increased to $100,000/$300,000. Plaintiff relies on the fact that the defendant insurer was represented by the same agent as the underlying insurer,

and defendant was, moreover, a wholly owned subsidiary of the underlying insurer. As such, the argument continues, defendant stands in a special relationship to her and to the underlying insurer; and these relationships gave rise to a duty on March 21, 1980, beyond that statutorily mandated by section 143a of the Illinois Insurance Code. Notwithstanding the relationships, defendant neither informed plaintiff of the consequences of her decision to increase coverage on the underlying policy, nor offered to refund the premium for the period of illusory coverage. Ergo, plaintiff concludes, the public policy of the State of Illinois requires that, defendant having failed to make a concurrent offer to increase her uninsured motorist coverage on the excess policy, the amount of uninsured motorist coverage available to her thereunder on April 21, 1980, should be implied in the amount of $1 million. In support of her argument, plaintiff cites case law interpreting the Illinois Insurance Code favorably to insureds. *E.g., Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 452 N.E.2d 49; *Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 493 N.E.2d 748; *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548; *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 628 N.E.2d 1263.

We have reviewed the foregoing cases and find them inapposite to the issue on appeal. Instead, our analysis proceeds from a reading of the statute in question as it existed at the time the excess policy was issued (September 21, 1979) and as amended by Public Act 81-1202, effective March 1, 1980. The statute formerly read, in pertinent part:

"[N]o policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, *in limits for bodily injury or death set forth in Section 7—203 of the Illinois Vehicle Code* for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom ***." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 73, par. 755a.)

By amendment effective March 1, 1980, the following language was added after that portion underscored above:

"*and shall be offered in the same amounts as the limits for*

*bodily injury or death provided in the policy providing the coverage required by this Section"* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 73, par. 755a, as amended by Pub. Act 81—1202, sec. 1, eff. March 1, 1980.

■ Plaintiff seeks to impose on defendant as of March 21, 1980, six months before the renewal date of her excess policy, the duty added by the foregoing amendatory language. However, the rule in this State is clear that, in the absence of legislative intent to the contrary, the statute in effect at the time an insurance policy is issued or last renewed controls such policy. (*Prudential Property & Casualty Co. v. Piotrowski* (1986), 149 Ill. App. 3d 833, 838, 501 N.E.2d 250, 254 (citing *DC Electronics, Inc. v. Employers Modern Life Co.* (1980), 90 Ill. App. 3d 342, 412 N.E.2d 23).) Section 143a specifically refers to policies "renewed or delivered or issued for delivery." In *Coronado v. Fireman's Fund Insurance Co.* (1985), 131 Ill. App. 3d 450, 475 N.E.2d 1048, the court was asked to determine whether the amended statutory limit for uninsured motorist coverage which took effect on March 1, 1980 (pursuant to Pub. Act 81—1202, sec. 2) applied to a policy issued on January 20, 1979, for a three-year term and required that increased coverage ($15,000) be afforded to plaintiff who was injured on June 2, 1980. The policy covering plaintiff provided uninsured motorist coverage at the statutory limits set forth in section 7—203 of the Illinois Motor Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 7—203). The court there determined that the "plain language" of section 143a required the conclusion that "[t]he limits in effect at delivery or issuance for delivery would *** remain in effect until such time as the policy is renewed." (*Coronado v. Fireman's Fund Insurance Co.* (1985), 131 Ill. App. 3d 450, 475 N.E.2d 1048, 1051.) Accordingly, the court refused to give retroactive effect to the increase in statutory limits for uninsured motorist coverage, and plaintiff's amended award totalling $10,000 was affirmed.

■ In like manner, courts considering other amendatory acts affecting automobile insurance coverage have refused to apply them retroactively. (*Prudential Property & Casualty Co. v. Piotrowski* (1986), 149 Ill. App. 3d 833, 501 N.E.2d 250 (construing section 143.01(b) of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(b), added by Pub. Act 83—1132, sec. 1, eff. July 11, 1984)); *Boyd v. Madison Mutual Insurance Co.* (1987), 116 Ill. 2d 305 (construing section 143a—2(7) of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(7), added by Pub. Act 83—1390, sec. 1, eff. January 1, 1985)).) As stated in *Piotrowski*, "in Illinois, retroactive application of a new statute is 'defined in terms of the effect a law would have on

vested contractual rights, not in terms of the time when a party happens to assert those rights.' (*McAleer Buick-Pontiac Co. v. General Motors Corp.* (1981), 95 Ill. App. 3d 111, 113, 419 N.E.2d 608.)" (*Prudential Property & Casualty Co. v. Piotrowski* (1986), 149 Ill. App. 3d 833, 838, 501 N.E.2d 250, 254.) Insurance contracts are vested on the date the policy period commences. Since in both *Piotrowski* and *Boyd* the amendatory legislation at issue imposed new financial obligations for the insurer which were not bargained for in the original agreements for insurance coverage, the courts ruled in both cases that the constitutional prohibition against impairment of contracts required that the legislation be applied prospectively.

The excess policy at issue in this case was vested on September 21, 1979. Unquestionably, section 143a, as amended by Public Act 81—1202, affects the obligations of the insurer in ways not bargained for when the insurer agreed to provide plaintiff with "excess" insurance coverage. While we are not unmindful of the arguably compelling circumstances presented herein, we would, in our opinion, run afoul of both the legislative intent of section 143a (see *Coronado*) and the constitutional prohibition against impairment of contracts (see *Boyd* and *Piotrowski*) were we to reach a contrary result in this case.

■ Accordingly, we hold that the insurer's duty to offer uninsured motorist insurance on the excess policy was controlled by the statute as it existed on September 21, 1979, and that neither the passage of amendatory legislation effective March 1, 1980, nor the renewal of the underlying policy on March 21, 1980, affected defendant's duties with respect to uninsured motorist coverage in the excess policy prior to the decedent's accident of April 21, 1980. Because plaintiff's complaint does not plead the breach of a legal duty owed to her at the relevant time, the trial court did not err in granting judgment for defendant on all counts. Our determination of this issue obviates the need to address the alternative ground argued by defendant in support of the trial court's judgment in its favor.

For these reasons, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

WOMBACHER and SCOTT, JJ., concur.