EDWARD N. BERNIER, Plaintiff-Appellee, v. TRANSAMERICA INSURANCE COMPANY, Defendant-Appellant.

Second District   No. 2—90—0969

Opinion filed June 20, 1991.

Karen L. Kendall and Gary M. Peplow, both of Heyl, Royster, Voelker & Allen, of Peoria, and Douglas J. Pomatto, of Heyl, Royster, Voelker & Allen, of Rockford, for appellant.

Ronald T. Wade, of O'Brien, Healy, Wade & Gorman, of Rockford, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Transamerica Insurance Company, appeals from a judgment of the circuit court granting plaintiff Edward N. Bernier's motion for summary judgment. Plaintiff sought the reformation of an insurance policy issued to him by defendant. The trial court's ruling came after cross-motions for summary judgment had been filed by the parties. The court's order raised the underinsured motorist coverage from $30,000 per person to $100,000 per person. The trial court based its ruling upon the principle that, where an insurer fails to make an adequate offer of additional uninsured or underinsured motorist coverage required by the applicable provisions of section 143a—2 of the Illinois Insurance Code (Insurance Code) (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2), the additional coverage may be implied in law, and a trial court may reform the policy to include the higher coverage.

Defendant contends that plaintiff received an adequate offer, which satisfied the statutory requirements, to purchase uninsured and underinsured coverage equal in limits to his bodily injury liability coverage, but that plaintiff elected to accept lower limits. Therefore, defendant believes the trial court should not have reformed the policy to the higher limits. We disagree that defendant made a proper offer of additional insurance coverage to plaintiff. The reformation of the policy was proper. We therefore affirm.

For several years prior to May 1984, plaintiff purchased automobile insurance coverage from State Farm Mutual Automobile Insurance Company through an agent named Al Ethridge. The State Farm

policy contained liability limits for bodily injury of $100,000 per person and $300,000 per accident. Both the uninsured (UM) and underinsured (UNDM) motorist coverages were in the amounts of $100,000 per person and $300,000 per accident during the period June 19, 1981, to May 19, 1984. When plaintiff first obtained insurance coverage from Ethridge in 1973, the agent explained what UM motorist coverage was. Plaintiff's deposition indicates that, prior to 1981, he may have received a letter from State Farm explaining what UNDM coverage was and that it could be purchased up to his bodily injury limits. He was at least aware that he had purchased from State Farm UNDM coverage of $100,000 per person and $300,000 per accident.

In May 1984, plaintiff's neighbor, Nancy Eckburg, contacted plaintiff regarding the purchase of automobile insurance through the Flynn Insurance Agency, where Eckburg was a newly employed sales agent of an independent insurance broker who was her brother. Eckburg advised plaintiff that she could get him the same coverage he had with State Farm at a better price. Eckburg and plaintiff met at his home, where plaintiff showed her the declaration page from his State Farm policy showing his coverage with that company, and he asked Eckburg to obtain the same coverage. Eckburg drew up an insurance package and gave plaintiff a price, including the cost of UNDM coverage, presumably with limits of $100,000 and $300,000. Eckburg explained what UNDM coverage was. Plaintiff asked Eckburg to obtain insurance coverage with bodily injury limits of $100,000/$300,000 and an equal amount of coverage for UM and UNDM. The application for insurance was not completed by Eckburg, however, but was completed by her brother. It was apparently signed later by plaintiff's wife, who was not present at the meeting.

In due course, an automobile insurance policy was issued by Transamerica. The policy issued by defendant, effective May 18, 1984, included bodily injury liability coverage with a single limit of $300,000 and UM and UNDM coverage with a single limit of $30,000. Although plaintiff read the declaration page with those limits on it when he received it, he did not recall whether he ever contacted Eckburg to increase the limits for UM and UNDM coverage. When defendant issued its policy of insurance to plaintiff, no mailer or other communication was sent to plaintiff offering to increase the UM and UNDM limits to an amount equal to the limit for bodily injury coverage.

The deposition of Nancy Eckburg indicates that she had little independent recollection of the face-to-face meeting with plaintiff in May 1984. She explained that her usual practice would have been to

go through all of the coverage options and pricing for the client, including the availability of UM and UNDM coverage up to the limits of his bodily injury coverage. She could not recall how much $300,000 of coverage for UM and UNDM would have cost. She had no specific recollection whether she had explained to plaintiff what UM and UNDM coverage was, but stated it would have been her usual practice to do so. Between May 1984 and October 1986, plaintiff contacted Eckburg nine times to make changes on the policy, but none of the changes involved an increase in UM and UNDM coverage.

On December 5, 1986, plaintiff was involved in an automobile accident. The driver of the other vehicle was insured by another company whose policy limit for bodily injury liability was only $25,000. Plaintiff filed suit against the estate of the other driver and was awarded judgment in the amount of $110,000. Plaintiff also filed a suit for declaratory judgment seeking to reform the policy issued to him by defendant. Plaintiff sought to raise the $30,000 UNDM coverage to $100,000 because of defendant's failure to offer the higher coverage to plaintiff pursuant to the provisions of the Insurance Code.

■ As we see it, the sole issue raised in this appeal is whether defendant, as the insurer, made a proper "offer" of additional underinsured motorist coverage which satisfied the relevant statutory requirements of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2) as construed by our courts and which would make effective the insured's clear power of acceptance or rejection of the additional coverage. (See, *e.g., Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425; *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 333.) At the relevant time in question (as well as under the present version), section 143a—2(1) of the Code required *insurers* to offer insureds uninsured motorist coverage in an amount equal to the insured's bodily injury liability limit. (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(1); *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 553.) Section 143a—2(5) also then required, as it does now, that on or after July 1, 1983, any policy which provided uninsured motorist coverage in excess of the statutory minimum provided by section 7—203 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 7—203, as amended) must also provide underinsured motorist coverage in an amount equal to the amount of uninsured coverage. (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(5); *Krska,* 162 Ill. App. 3d at 553.) In other words, the right to elect higher UM coverage carries with it the right to elect an equal amount of UNDM coverage.

■ Reading the two sections together, it is clear that defendant was required to offer UNDM motorist coverage in an amount equal to plaintiff's bodily injury liability limit. (See *Krska*, 162 Ill. App. 3d at 553.) Defendant acknowledges that an offer of increased coverage for UNDM was required by the Insurance Code. Defendant correctly points out that, under section 143a—2(2) of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(2)), the insured may elect or reject additional UM coverage up to the bodily injury limits provided that coverage is not less than that required by section 7—203 of the Illinois Vehicle Code. Where the insured elects to purchase UM coverage less than his bodily injury limits, or rejects limits in excess of that required by law, the insurer need not offer, in any renewal or supplementary policy, coverage in excess of that elected by the insured, unless the insured subsequently makes a written request for such coverage. Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(2).

Defendant argues that plaintiff was given the *opportunity* to purchase higher UNDM coverage equal to the limits of his bodily injury liability coverage because he received sufficient information regarding UNDM at the meeting with Eckburg, the independent insurance broker. Defendant apparently claims, without citation to relevant authority, that, where an insured receives sufficient information regarding UNDM coverage from other sources, the insurer is excused from making an "offer" of such coverage which meets the four-part test of a proper "offer" adopted by our supreme court in *Cloninger*. 109 Ill. 2d at 425-26, 427.

■ Under *Cloninger* and decisions following it, to satisfy the requirements of section 143a—2 of the Code, an offer must (1) notify the insured in a commercially reasonable manner if the offer is not made in face-to-face negotiations; (2) specify the limits of the optional coverage without using general terms; (3) intelligibly advise the insured of the nature of the offer; and (4) advise the insured that the optional coverage is available for a relatively modest premium increase. (See *Krska*, 162 Ill. App. 3d at 553; see also *Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 475.) An offer must meet all four parts of the test to satisfy the requirements of the Insurance Code. An otherwise model offer may be insufficient if it fails to provide specific price information. *Orr v. Illinois Farmers Insurance Co.* (1991), 210 Ill. App. 3d 1015, 1025-26; *Watson v. Hartford Casualty Insurance Co.* (1990), 205 Ill. App. 3d 88, 94.

Defendant proposes that, where plaintiff admitted that he understood that he could have UNDM coverage equal to his bodily injury coverage and asked his broker to obtain that coverage for him, the

extensive four-step analysis of *Cloninger* regarding what constitutes an adequate offer is unnecessary, presumably because an adequate offer may be implied from the broker's representations to plaintiff and from plaintiff's own knowledge. In support of this position, defendant relies on a statement made by this court in *Rutter* which said, "if plaintiff received from another source the information missing from the offer itself, no legitimate purpose would be served by relieving plaintiff of the consequences of his decision not to purchase the additional coverage" (*Rutter*, 190 Ill. App. 3d at 476). (See also *Watson*, 205 Ill. App. 3d at 94 ("it is possible that the plaintiffs may have received the information from another source, such as an insurance agent"); *Orr*, 210 Ill. App. 3d at 1028 ("Plaintiffs may obtain missing information from another source").) We emphasize that this type of supplementary information from other sources may cure an otherwise inadequate offer only where an actual offer was made by the insurer or its own agent. The language used in those cases regarding supplementary sources of information does not stand for the proposition that the insurer can shift its statutory duty entirely to the insurance consumer for whose protection the legislation was enacted or to third parties who are not agents of the insurer. If there is the slightest doubt that the law places the duty to make an offer on the insurer and its agents, we remove that doubt by our decision today.

■■ ■ In the case at bar, the salient fact is that neither the insurer nor one of its own agents ever offered plaintiff the additional UNDM coverage, and defendant conceded in the trial court and in this court that it relied instead on the independent broker's representations regarding such an "offer." That reliance was misplaced. An independent insurance agent or broker acts as the agent of the insured, not the insurer, and has no duty to advise the insured of the availability of increased UM (or UNDM) coverage. (*Shults v. Griffin-Rahn Insurance Agency, Inc.* (1990), 193 Ill. App. 3d 453, 456-57.) It was the insurance company's duty to notify the insured upon the issuance of a policy that he could purchase the additional coverage, and, where an insurance company fails to comply with section 143a—2 by not making the additional coverage conspicuously known to the insured, the insurance policy will be reformed to include the higher coverage. *Shults*, 193 Ill. App. 3d at 457.

It is uncontested that the defendant insurer never made an offer of additional insurance to plaintiff. Here, the independent broker had neither the duty nor the power to make the offer. Therefore, plaintiff had no meaningful opportunity to accept or reject the offer. It was not plaintiff's duty to inquire. Had defendant made a definite offer in

clear and specific terms as required by law, plaintiff would have had a clear power to accept or reject the coverage. (See *Cloninger*, 109 Ill. 2d at 425.) The question whether the independent insurance agent or broker breached her fiduciary duty in procuring insurance on behalf of plaintiff is not properly before this court. The state of plaintiff's knowledge and understanding regarding the availability of additional UM or UNDM coverage cannot be the focus of further inquiry here where the insurer never actually made an offer to plaintiff, as it was required to do under the Insurance Code.

■■ ■ The provisions of the Insurance Code regarding underinsured motorists were intended to foster the compensation of injured parties more adequately as well as to protect insurance consumers. (*Cloninger*, 109 Ill. 2d at 424.) The burden of providing an adequate offer of additional insurance coverage upon the issuance of a policy was slight, and defendant's duty was clearly mandated by statute. We decline defendant's "offer" to shift its responsibility to the consumer or to an independent third party. Under the circumstances, the trial court properly reformed the policy to include the higher coverage.

The judgment of the circuit court is affirmed.

Affirmed.

BOWMAN and NICKELS, JJ., concur.