1-99-3374

THADEUS NORRIS and NICOLETTE NORRIS, as ) Appeal from the

Special Administrators of the Estate of Tommy J. ) Circuit Court of

Norris, Deceased, ) Cook County.

)

Plaintiffs-Appellants/Cross-Appellees, ) 

)

)   

)

NATIONAL UNION FIRE INSURANCE ) 

COMPANY OF PITTSBURGH, PA, )

)

Defendant-Appellee/Cross-Appellant, )

)

and )

)

ALLSTATE INSURANCE COMPANY and )

TOMMY E. KIDD, ) Honorable

) John K. Madden,

Defendants.            ) Judge Presiding.

JUSTICE REID delivered the opinion of the court:

This is an appeal from the grant of cross-motions for summary judgments in a declaratory judgment action.  Both cross-motions were granted in part and denied in part.  On appeal, the issues are:  (1) whether the circuit court correctly reformed the commercial trucking policy to require that the insurer was obligated to provide uninsured motorist coverage only in the amount of the statutory minimum requirements rather than in an amount equal to the liability limits of the policy; (2) whether plaintiff's receipt of workers' compensation benefits in excess of the statutory minimum for uninsured motorist coverage served as a set-off, barring plaintiffs' uninsured motorist claim; (3) whether the exclusive remedy afforded by the Workers' Compensation Act to workers who are accidentally injured in the scope of their employment bars plaintiffs' claim for uninsured motorist coverage against the decedent's employer or its insurer; and (4) whether plaintiffs' claim for uninsured motorist coverage is barred where the commercial trucking policy specifically excludes from coverage employees who are injured during the course of employment and are covered by workers' compensation.  The trial court found that the policy should be reformed to include the statutory minimum uninsured motorist coverage.  Therefore, the workers' compensation set-off would bar plaintiffs' uninsured motorist claim.  We reverse and remand.

THE FACTS

Tommy J. Norris (decedent) was killed in a traffic accident on October 4, 1989.  He was driving a truck owned by Jones Truck Lines, Inc., an Arkansas corporation headquartered in Springdale, Arkansas, with a fleet of approximately 3,500 trucks.  The other party, Tommy E. Kidd (Kidd), was an uninsured motorist.  The truck the decedent  was driving was registered in Illinois and garaged in Chicago.  At the time of the accident, the decedent owned an automobile insured through the Allstate Insurance Company under policy number 032911574.  At the time of his death, the decedent was survived by his wife Joanne Norris, his minor son Tommy J., his adult son Thadeus and his adult daughter Nicolette.  The workers' compensation insurer paid Joanne and Tommy J. over $200,000.  

Thadeus and Nicolette Norris (the Norris plaintiffs) brought a declaratory judgment action against Allstate, based on the Norrises' automobile insurance policy with Allstate, seeking a declaration that Allstate was obliged to pay uninsured motorists' benefits to Tommy Norris' adult children.  They allege that the adult children were not recipients of benefits under the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 
et
 
seq
. (West 2000))  because the Act only applies to spouses and minor children.  Allstate brought a motion for judgment on the pleadings which was sustained, the trial court holding that the benefits received under the Workers' Compensation Act were in excess of the $20,000 uninsured motorist limits in the Allstate policy and the setoff provisions contained therein.  That order was not appealed, so Allstate is not a party to this appeal.

The original complaint was amended to add defendant AIG Risk Management, Inc. (AIG). By the time the second amended complaint was allowed, the trial court had authorized the substitution of the National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) as a defendant.  National Union had issued commercial fleet general liability policy number RMCA53357-76 to Jones Truck Lines.  Said policy was to be in effect from September 26, 1989, until September 26, 1990.  That policy had personal injury limits of $2 million per accident but contained no uninsured motorist coverage whatsoever.

While arguing before the trial court on September 3, 1999, the Norris plaintiffs argued that the trial court should apply the liability limits of the policy, $2 million.  National Union argued that it was more appropriate to apply the statutory limits of $20,000 per person and $40,000 per occurrence.  The trial court, commenting that the relief sought by the Norris plaintiffs was more in the nature of a punitive sanction for National Union's failures in drafting the policy, found in favor of National Union on that issue.  The trial court, in granting both motions in part and denying them in part, ordered the policy reformed to the minimum statutory limits.  

National Union had previously filed a motion for summary judgment based upon the exclusivity provisions of the Workers' Compensation Act.  The trial court denied that motion on September 18, 1998, but the parties requested no finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  Appeal from that order is included in National Union's cross-appeal.  

ANALYSIS

I

The Norris plaintiffs argue that the trial court, while correct in reforming the policy, erred in limiting the reformation to the statutory minimum of $20,000 per person and $40,000 per accident.  Instead, the Norris plaintiffs argue the correct reformation was to the bodily injury limits of $2 million.  They argue that the uninsured motorist statute, by operation of law, becomes a part of every insurance contract entered into in Illinois.  According to the Norris plaintiffs, the statute requires that no insurance policy should be issued or renewed unless uninsured coverage is offered that is equal to the personal injury limits.  The named insured can elect to take or reject the offer of uninsured coverage in excess of the minimum statutory limits.  The Norris plaintiffs argue that, where there exists an insufficient offer of uninsured motorist coverage which justifies reformation, the courts should impose the higher level, not the lower one.  Plaintiffs further argue it would be unfair to require the injured party or his or her heirs to bear the burden of the fact that the insurer failed to make the proper offer.  We agree.

The Norris plaintiffs next contend that any purported rejection by Jones Truck Lines of the excess uninsured motorist coverage, even a rejection that is consistent with its commonly used business practices, was invalid because the policy of insurance did not comply with the law.   The Norris plaintiffs claim there is no way Jones could have consented to an insurance policy without uninsured coverage, so any purported rejection was against public policy.  

National Union responds that the purpose of the uninsured motorist statute is “to place the insured policyholder in substantially the same position he would occupy if the uninsured driver had been minimally insured.”  
Luechtefeld v. Allstate Insurance Co.
, 167 Ill. 2d 148, 152 (1995).  Though they agree that a failure to make an offer of coverage equal to the bodily injury limits level can result in the reformation of coverage to the higher level, they argue that this does not apply when the rejection of coverage is clear and specific.  National Union argues that Jones, as a sophisticated insured, had the business practice of rejecting all coverage except the minimum, choosing to be a self-insurer to the greatest extent possible.  To that end, Jones has a self-insured retention of a $500,000 deductible.  Jones contends that Larry May, Jones' risk manager, negotiated the policy in face-to-face negotiations.  As a result of those negotiations, National Union argues that it offered Jones Truck Lines uninsured motorist coverage up to the $2 million limits of the policy and Jones Truck Lines made a knowing and intelligent rejection of that offer.

The Norris plaintiffs next contend that the Illinois Workers' Compensation Act (820 ILCS 305/1 
et
 
seq
. (West 2000)) does not bar recovery under the policy.  The claims at issue are not barred, as National Union suggests, by the exclusive remedy provisions of the Workers' Compensation Act, since the object of that act is to afford financial protection for employees injured at work without regard to fault and to limit the employer's liability for work injuries.  
Zurowska v. Berlin Industries, Inc.
, 282 Ill. App. 3d 540 (1996).  The Norris plaintiffs argue that the inclusion of the employer's insurer in the Act does not compromise the uninsured motorist claim, since those claims are from injured persons legally entitled to recover.  They argue that the intent of the statute is to place a claimant in the same position as if the tortfeasor causing the injuries had  been insured.  
Scudella v. Illinois Farmers Insurance Co.
, 174 Ill. App. 3d 245 (1988).  The other driver in the underlying accident, Kidd, is a complete stranger to the decedent and his employer and employee relationship with Jones Truck Lines.  The Norris plaintiffs argue that they would be legally entitled to recover from Kidd, assuming they could sustain their burden of proving he was at fault.  Because there is no form of immunity at work here, the Norris plaintiffs argue that National Union would not be precluded from pursuing subrogation rights against Kidd as it would against a co-employee.  They argue that National Union's contractual rights are not impaired and there is no reason to preclude the Norris plaintiffs' claim for uninsured motorist benefits.  

National Union responds that, since the Norris plaintiffs received workers' compensation benefits, there should be a setoff of any recovery here against those benefits.  Since National Union argues the policy reformation should be limited to the statutory minimum limits, and the Norris plaintiffs have received workers' compensation benefits in excess of $200,000, recovery should be precluded as a result.  National Union also argues that the policy itself, under Exclusion 3, precludes coverage for “[a]ny obligation for which the `insured' or the `insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.”  They further argue that Illinois courts have enforced the set-off of workers' compensation benefits received with respect to uninsured motorist coverage.  
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548 (1992); 
State Farm Mutual Automobile Insurance Co. v. Murphy
, 263 Ill. App. 3d 100 (1994).  

Alternatively, in its cross-appeal, National Union argues that workers' compensation is the exclusive remedy for workers injured in the course of their employment, not only against employers and co-employees, but against the employer's insurer as well.  They also argue that the facts of this case do not qualify for an escape from the exclusivity of remedy rule, since the Norris plaintiffs would have to prove the decedent's injuries were not accidental, did not arise from his employment, were not received during the course of his employment or were noncompensable under the Act.  
Meerbrey v. Marshall Field & Co
., 139 Ill. 2d 455 (1990).  

II

The standard of review is 
de novo
 since this appeal arises from an order granting summary judgment.
  
Aetna Casualty & Surety Co. of Illinois v. Allsteel, Inc.
, 304 Ill. App. 3d 34, 39 (1999).  “In ruling on a motion for summary judgment, the trial court must view all evidence in the light most favorable to the nonmovant.”  
Boldini v. Owens Corning
, 318 Ill. App. 3d 1167, 1170 (2001).  The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2000). 

“When a court interprets an insurance policy, there are only two sources upon which it may base its analysis: the plain language of the policy and the plain language of the Insurance Code of 1937 as it existed at the time the policy was written.”  
Cincinnati Insurance Co. v. Miller
, 190 Ill. App. 3d 240 (1989), citing 
Bailey v. State Farm Fire & Casualty Co.
, 156 Ill. App. 3d 979, 984 (1987).  Statutes that are in force at the time a policy is issued are controlling.  
Brooks v. Cigna Property & Casualty Cos.
, 299 Ill. App. 3d 68, 72 (1998), citing 
American Family Mutual Insurance Co. v. Baaske
, 213 Ill. App. 3d 683, 688 (1991).  “Where a statute provides for uninsured motorist coverage, the statute becomes a part of each policy to which the statute applies to the same effect as if the statutory language were written in the policy.”  
Brooks v. Cigna
, 
299 Ill. App. 3d at 72, citing 8C  J. Appleman & J. Appleman, Insurance Law & Practice §5067.35, at 36 (1981).  

In controlling obligations and rights of insurers, any limitations placed on uninsured motorist coverage by an insurer should be liberally construed in favor of the policyholder.  
State Farm Mutual Automobile Insurance Co. v. Pfannebecker
, 64 Ill. App. 3d 582, 586 (1978), citing 
Barnes v. Powell
, 49 Ill. 2d 449 (1971).   It is fundamental that an insurance policy must comport with the applicable statutory provisions of the Illinois Insurance Code (Insurance Code) in effect at the time the policy was drafted.  Ill. Rev. Stat. 1989, ch. 73, par. 613 
et
 
seq
.  Section 143a-2 of the Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a-2) provides as follows:

“No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State 
unless uninsured motorist coverage as required in Section 143a of this Code is offered in an amount up to the insured's bodily injury liability limits
." 
 
(Emphasis added.)

As such, “every liability insurance policy issued for any motor vehicle registered or principally garaged in Illinois must provide coverage for bodily injury or death caused by an uninsured or hit-and-run vehicle.”  
Luechtefeld v. Allstate Insurance Co.
, 167 Ill. 2d 148, 152 (1995).  Uninsured motorist coverage must be at least in the amount set forth in section 7-203 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½ par. 7-203), which reads, in pertinent part:

“*** such policy or bond is subject, if the motor vehicle accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $20,000 because of bodily injury to or death of any one person in any one motor vehicle accident and, subject to said limit for one person, to a limit of not less than $40,000 because of bodily injury to or death or 2 or more persons in any one motor vehicle accident, and, if the motor vehicle accident has resulted in injury to or destruction of property, to a limit of not less than $15,000 because of injury to or destruction of property of others in any one motor vehicle accident.”

In order to satisfy the requirements of section 143a-2 of the Insurance Code, an offer of uninsured motorist coverage must meet the four-prong test described in 
Cloninger v. National General Insurance Co.
, 109 Ill. 2d 419 (1985) (see also 
Tucker v. Country General Mutual Insurance Co.
, 125 Ill. App. 3d 329, 333 (1984)).  Under 
Cloninger
 and the decisions following it, to satisfy the requirements of section 143a-2 of the Code, an offer must (1) notify the insured in a commercially reasonable manner if the offer is not made in face-to-face negotiations; (2) specify the limits of the optional coverage without using general terms; (3) intelligibly advise the insured of the nature of the offer; and (4) advise the insured that the optional coverage is available for a relatively modest premium increase.  An offer must meet all four parts of the test to satisfy the requirements of the Insurance Code.  
Bernier v. Transamerica Insurance Co.
, 215 Ill. App. 3d 118, 123 (1991).  
It is unreasonable to ask a company or individual to accept or reject coverage that is incorrectly listed on the forms presented.  The form in the case at bar instructs Jones Truck Lines to accept or reject uninsured coverage and purports to inform Jones Truck Lines as to the basic limits required in several states and the District of Columbia.  As to Illinois, the form suggested the basic limits in Illinois are $30,000.  This is incorrect as the Insurance Code requires the minimum of $20,000 per person and $40,000 per occurrence.  The rejection/selection form also fails to identify how much additional coverage would cost.  As a result of these errors, considering all the presumptions that must be taken in favor of the insured, it is as if no offer was made at all.  While it is true that Jones Truck Lines marked an X in the space for rejecting uninsured motorist coverage, since the offer was not made in a proper manner upon which an individual or company could make an informed choice to accept or reject, its purported rejection is not effective.  Additionally, National Union's failures are a violation of the statute.  We cannot hold that the violation of a statute is something that can be contractually waived.  The entire basis for the reformation before this court is the failure to include uninsured motorist coverage in the policy.  Even though there were face-to-face negotiations between the Jones Truck Lines representative and the representative of National Union they could not agree to violate Illinois law.  This is not an equitable reformation in the classic sense; it is actually a 
de
 
jure
 reformation based upon the violation of statutes and the public policy of Illinois and the failure of the insurance company to comply therewith.  When the trial court characterized the necessary reformation as a possible sanction against the insurer for their failure to comply with the law, it was correct.   

National Union claims that the Norris plaintiffs' receipt of workers' compensation benefits in excess of the statutory minimum uninsured motorist coverage acts as a setoff, the practical effect of which barred the plaintiffs' claims.  Since the reformation of the contract should have been done to include uninsured coverage up to the personal injury limits, or in this case $2 million, National Union's argument is rendered unnecessary.  While a setoff is appropriate, according to 
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548 (1992),  it in no way acts as a bar since the workers' compensation benefits of $200,000 received still leaves a significant pool of potential coverage from which to draw.   

Workers' compensation does not act as a bar to the Norris plaintiffs' claims.  Since Kidd, the other party to the accident, is a stranger to the employment relationship between the decedent and Jones Truck Lines, the plaintiffs have a right to be made whole.  “The [Workers' Compensation] Act `was designed to provide speedy recovery without proof of fault for accidental injuries' that occur in the work place during the course of work.”  
Zurowska v. Berlin Industries, Inc.
, 282 Ill. App. 3d 540, 542 (1996), quoting 
Fregeau v. Gillespie
, 96 Ill. 2d 479 (1983).  The 
Zurowska
 court continued to say that “[t]he compensation provided by the Act is the exclusive remedy for such injuries."  
Zurowska
, 282 Ill. App. 3d at 542.  We agree that the Workers' Compensation Act provides specific remedies applicable to specific situations.  It does not, however, act as a compete bar to all actions simply because one of the parties and an insurance policy held by an employer are implicated.  

Section 5(a) states, in relevant part, as follows:

“§ 5. (a) No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury.”  820 ILCS 305/5(a) (West 2000).

National Union would have this court apply that language as a complete bar to the Norris plaintiff's case.  We cannot go that far because, even though the 
Zurowska
 language sounds like a complete bar, it is factually inapposite to this discussion.  Here, the injuries that ultimately led to the decedent's demise were caused by a third party liable in tort, not his employer, a co-employee or the employer's insurer.  “`Generally, under the doctrine of 
expressio unius est exclusio alterius
, when a statute lists certain things, those things omitted are intended as exclusions.'”  
In re Detention of Hayes
, 321 Ill. App. 3d 178, 194 (2001), quoting 
People ex rel. Klaeren v. Village of Lisle
, 316 Ill. App. 3d 770, 781 (2000).  Terms excluded by the legislature cannot be implied in the statute.  
Rosewood Corp. v. Tranamerica Insurance Company
, 8 Ill. App. 3d 592 (1972).  The category of third parties liable in tort to an injured employee is conspicuously absent from the language of the Workers' Compensation Act.  As a result, the bar contained in section 5(a) does not apply.  

As to National Union's argument that the insurance policy contains an exception for workers' compensation, which it does, said exception is unenforceable as a matter of public policy in this situation.  Logic dictates that a commercial trucking venture necessitates the use of employees to drive the trucks.  It is highly likely that, like the decedent, some employees are going to get into traffic accidents with persons other than employers or co-employees.  Here the policy exclusion for workers' compensation specifically excludes “[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or similar law.”  That clause would apply if the insured was being sued by his own employee, since workers' compensation applies in that situation to give the injured party a recovery without the necessity of a showing of negligence.  If the other driver had insurance, the Norris plaintiffs would be suing him and his insurer and would likely recover.  As we have seen, the requirement of uninsured motorist coverage is mandated by the statute so as to facilitate an injured plaintiff or his or her heirs being made whole.  In this particular situation, it would be both inequitable and against public policy to leave the heirs of this dead driver with no remedy.  One should bear in mind that, had National Union properly tendered an acceptable or rejectable offer of uninsured motorist coverage, its ultimate liability and the necessary setoffs would have severely limited its ultimate liability in this case.  If the door has been opened that leads to a potential $2 million recovery, it is National Union with its hands on the doorknob based on its failure to comply with Illinois law.  Therefore, we hold that the trial court should have reformed the commercial trucking policy to require that the insurer was obligated to provide uninsured motorist coverage in an amount equal to the liability limits of the policy.  We further hold that the workers' compensation set-off, therefore, would not bar plaintiffs' uninsured motorist claim, nor would the exclusive remedy provision of said Act, and nor would any alleged exclusion contained in the said policy bar their claim.

CONCLUSION

Accordingly, the judgment of the circuit court is reversed and the case is remanded for further proceedings consistent with this opinion.  

Judgment reversed and cause remanded.

Greiman, J., concurs.

PRESIDING JUSTICE QUINN, dissenting.

I respectfully dissent.  The majority correctly holds that in order to satisfy the requirements of section 143a-2 of the Insurance Code (now codified as 215 ILCS 5/143a-2 (West 2000)),  National Union's offer of uninsured motorist coverage had to meet the four-prong test of 
Cloninger v. National General Insurance Co.
, 109 Ill. 2d 419, 425-26 (1985).  While 
Cloninger
 involved an offer of underinsurance coverage, it has been applied to uninsured motorist coverage as well.  
Millers Mutual Insurance Ass'n. of Illinois v. House
, 286 Ill. App. 3d 378, 383 (1997). However, I believe that National Union met the requirements of 
Cloninger
.

Here, National Union participated in face-to-face negotiations with Jones Truck Lines and with an insurance broker hired by Jones Truck Lines for the purpose of negotiating nationwide insurance coverage for Jones' fleet of several thousand trucks.  These negotiations took over a year to complete.  Lester May was the director of risk management for Jones Truck Lines and he testified by way of deposition and in an affidavit. 

Mr. May attested: "12.  With respect to Illinois, it was Jones' specific intent to reject uninsured and underinsured coverage.  If that was not possible, it was Jones' intent to purchase the minimum amount permitted by law."

Further, May testified at his deposition,

"Q.  And I think you answered earlier, I just want to make sure the record is clear.  You understood at all times when procuring insurance from National Union that you could purchase uninsured coverage up to your liability limits of $2 million?

A.  It was my understanding if I wanted it, they probably would sell me anything I was willing to pay for it.

Q.  Anything over –

A.  Let me add one comment to that.  They at all times offered me uninsured and underinsured motorist, and I at all times said no, as I've told you in my initial presentation, I would reject – I do not want uninsured motorist or underinsured motorist to be a part of my program.  If it's mandated by law, I will have to have it and you will have to cover it, but at whatever their absolute minimums are.  And at that point in time there is no need to talk about, well we can give you $5 million.  I am not interested because I don't want it coming out of my pocket." 

May testified that Jones Truck Lines had a deductible, or a self-insured retention, of $500,000 which greatly exceeded any statutorily required uninsured motorist coverage.  May's testimony clearly showed that Jones Truck Lines was aware of the option of purchasing coverage up to the bodily injury limit, that National Union had advised Jones Truck Lines of the nature of the option and that the optional coverage was available for a relatively modest premium.

Under Illinois law, the insured has the right to make an intelligently informed decision about whether to elect or reject uninsured motorist coverage in an amount equal to the insured's liability coverage.  
Millers Mutual Insurance Ass'n. v. House
, 286 Ill. App. 3d at 383.   The majority hold that because a three-page form (which listed 40 states and the District of Columbia) supplied by National Union listed Illinois' "Basic Limits" for uninsured motorist coverage as being $30,000, "the offer was not made in a proper manner upon which an individual or company could make an informed choice to accept or reject, [and] its purported rejection is not effective."  Slip op. at 10.

I believe that this holding is in error and is contrary to section 143a-2 of the Illinois Insurance Code, which at the pertinent time provided:

"[N]o policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is offered in an amount up to the insured's bodily injury liability limits."  Ill. Rev. Stat. 1989, ch. 73, par. 755a-2.

It is completely uncontested that National Union offered uninsured motorist coverage to Jones Trucking "in an amount up to the insured's bodily injury liability limits." It is also uncontroverted that Jones Trucking rejected this offer.

I think it is important to note that in 1990 the legislature amended section 143a-2(1) of the Illinois Insurance Code so that it now provides:

"§ 143a-2.  (1) Additional uninsured motor vehicle coverage.  No policy 

insuring against loss resulting from liability imposed by law for bodily 

injury or death suffered by any person arising out of the ownership, 

maintenance or use of a motor vehicle shall be renewed or delivered or 

issued for delivery in this State with respect to any motor vehicle designed 

for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is 

included in an amount equal to the insured's bodily injury liability limits 

unless specifically rejected by the insured
.  Each insurance company 

providing the coverage must provide applicants with a brief description 

of the coverage and advise them of their right to reject the coverage in 

excess of the limits set forth in Section 7-203 of The Illinois Vehicle Code. 

The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991."  (Emphasis added.)  215 ILCS 5/143a-2 (West 2000).

In interpreting this statute, our supreme court has held: '[W]e find that the 1990 statute places the burden on the insured to reject and subsequently to reduce the uninsured motorist coverage which is automatically set at an amount equal to the bodily injury liability.  No longer is the insurer responsible to make an offer, but rather it is the insured's duty to reduce the uninsured motorist coverage."  
DeGrand v. Motors Insurance Corp.
, 146 Ill. 2d 521, 533 (1992).  This shifting of the burden from the insurer to the insured is especially significant since the majority holds that "had National Union properly tendered an acceptable or rejectable offer of uninsured motorist coverage, its ultimate liability and the necessary setoffs would have severely limited its ultimate liability in this case."  Slip op. at 12.  May's testimony makes it abundantly clear that National Union's erroneous listing of $30,000 as the minimum amount of coverage required by Illinois law had no effect on Jones Truck Lines' rejection of uninsured motorist coverage.  Within months of the instant policy taking effect, the statute was amended to shift the burden to the insured.  The instant case is an excellent example of why the burden belongs on the insured, rather than the insurer.  

I believe that the trial court's ruling was consistent with a finding that the information supplied by National Union was sufficient to insure that Jones Truck Lines received enough information to make an intelligently informed decision.  As Jones Truck Lines made an informed choice and National Union complied with section 143a-2 of the Insurance Code as written in 1989, I would affirm the trial court's reformation of the policy at issue to include uninsured motorist coverage at the statutory minimum rather than at $2 million.

The majority concludes that under 
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548 (1992), National Union is entitled to a setoff of the amount the Norris plaintiffs received in worker's compensation benefits.  Consequently, as the workmen's compensation benefits received were in excess of the statutory minimum for uninsured motorist coverage, I would affirm the trial court's grant of summary judgment in favor of National Union.

The majority holds that the Workers' Compensation Act does not bar plaintiffs' claims for uninsured motorist coverage against the decedent's employer's insurer, National Union.  This holding is made without any real discussion or citation to authority. I would not reach this issue as I believe the previous discussion is dispositive.  Similarly, I would not reach the issue of the policy's exclusions.