SECOND DIVISION
October 17, 2006

1-05-3132

No. 1-05-3132

| | | |
|---|---|---|
| THADEUS NORRIS and NICOLETTE NORRIS, | ) | Appeal from the |
| as special administrators of the | ) | Circuit Court of |
| Estate of TOMMY J. NORRIS, Deceased, | ) | Cook County. |
| | ) | |
|     Plaintiffs-Appellees, | ) | |
| | ) | |
|         v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA., | ) | Honorable |
| | ) | Mary Anne Mason, |
|     Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

This is the second time this case has come before the appellate court. The defendant National Union Fire Insurance Co. of Pittsburgh, PA. (National Union) contends the uninsured motorist coverage limits rulings against it the first time were wrong and asks us to change them. National Union also contends the statutorily required arbitration based on the first decision is not binding on the parties and should not have been confirmed by the trial court. We adhere to the rulings in the first Norris decision and we affirm the trial court's judgment on the arbitration award.

FACTS

A clear understanding of the issues before us requires us to recount the history of this case.

Plaintiffs Thadeus and Nicolette Norris are special administrators of the estate of Tommy J. Norris, a truck driver employed by Jones Truck Lines, Inc. (Jones). Jones was insured under a commercial fleet general liability policy issued by National Union. On October 4, 1989, Tommy Norris was involved in a fatal accident with an uninsured motorist while working for Jones. The National Union policy had personal injury limits of $2 million per accident but did not include uninsured motorist coverage. Norris' estate received $200,000 in workers' compensation benefits as a result of his death.

Plaintiffs filed suit seeking a declaration that National Union's policy should be reformed to include uninsured motorist coverage equal to the policy's bodily injury liability limits of $2 million. On cross-motions for summary judgment, the trial court granted plaintiffs' motion to reform the policy, but ordered the policy reformed to the minimum statutory limits of $20,000 per person and $40,000 per occurrence. Because Norris' estate received $200,000 in workers' compensation benefits, the trial court held the workers' compensation set-off provision in the policy barred recovery under any possible uninsured motorist claim. Plaintiffs appealed.

In Norris v. National Union Fire Insurance Co. of Pittsburgh, PA., 326 Ill. App. 3d 314, 760 N.E.2d 141 (2001) (Norris I), this court considered: (1) whether the trial court correctly reformed the commercial trucking policy to require the insured to provide uninsured motorist benefits only in the amount of the statutory minimum requirements; (2) whether plaintiffs' receipt of workers' compensation benefits in excess of the statutory minimum for uninsured motorist coverage served as a set-off, barring plaintiffs' uninsured motorist claim; (3) whether the exclusive remedy afforded by the Workers'

1-05-3132

Compensation Act barred plaintiffs' claim for uninsured motorist coverage against the decedent's employer or its insurer; and (4) whether plaintiffs' claim for uninsured motorist coverage was barred because the National Union policy specifically excluded employees who are injured during the course of employment and covered by workers' compensation coverage.

The court reversed the trial court's order and remanded the cause for further proceedings, finding the National Union policy should have been reformed to include uninsured motorist coverage up to the personal injury limits of the policy, $2 million. Norris, 326 Ill. App. 3d at 322. Since the reformation should have included uninsured motorist coverage up to $2 million, the court concluded consideration of whether workers' compensation benefits in excess of the statutory minimum uninsured motorist coverage act as a set-off against any recovery was "rendered unnecessary." Norris, 326 Ill. App. 3d at 322.

The court rejected National Union's argument that the exclusive remedy provision of the Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) barred plaintiffs' claims, finding "[t]he category of third parties liable in tort to an injured employee is conspicuously absent from the language of the Workers' Compensation Act." Norris, 326 Ill. App. 3d at 323. The court also held the employee exclusion contained in the National Union policy was "unenforceable as a matter of public policy in this situation." Norris, 326 Ill. App. 3d at 323. National Union filed a petition for leave to appeal to the Illinois Supreme Court, which was denied. Norris v. National Union Fire Insurance Co. of Pittsburgh, PA., 198 Ill. 2d 618, 770 N.E.2d 220 (2002).

˘3˘

1-05-3132

On remand, the trial court ordered the matter to arbitration pursuant to the 1989 version of section 143a-1 of the Insurance Code. Ill. Rev. Stat. 1989, ch. 73, par. 755a-1 ("any dispute with respect to uninsured motorist coverage shall be submitted for arbitration to the American Arbitration Association.") The defendant did not attempt to appeal the trial court's order. The arbitrator entered a $2 million award for plaintiffs, which was reduced to $1,575,500 based on the decedent's contributory negligence and the workers' compensation benefits received by decedent's estate. On June 3, 2005, plaintiffs filed a motion to confirm the arbitration award. National Union filed a rejection of the arbitration award and requested a trial, relying on Supreme Court Rule 95 (134 Ill. 2d R. 95). National Union did not file a motion to vacate the arbitration award. On August 19, 2005, the trial court confirmed the award, noting:

> "The law in effect at the time the policy was issued provided
>
> for mandatory and binding arbitration. If mandatory and
>
> binding arbitration means anything, it means that the losing
>
> party does not have a right to a trial de novo."

DECISION

National Union contends this court's decision in Norris I should be overturned because it is palpably erroneous and works a manifest injustice against both insurers and insureds. National Union contends the law of the case doctrine does not bar reconsideration of the issues raised and decided in Norris I.

Plaintiffs contend National Union forfeited its right to challenge Norris I as palpably erroneous because it failed to raise the issue on remand in the trial court. We

fail to see how National Union could have raised such a challenge in the trial court.  On remand, the trial court was bound to follow this court's directions.  See Harris Trust & Savings Bank v. Otis Elevator Co., 297 Ill. App. 3d 383, 387, 696 N.E.2d 697 (1998) ("When a judgment of the circuit court is reversed and the cause is remanded by this court with specific directions as to the action to be taken, it is the duty of the trial court to follow those directions.")  Any argument to the contrary would have been futile.  We find forfeiture does not apply here.

Under the law of the case doctrine, questions of law decided on a previous appeal are binding on the trial court on remand as well as on the appellate court on a subsequent appeal.  Martin v. Federal Life Insurance Co., 268 Ill. App. 3d 698, 701, 644 N.E.2d 42 (1994).  However, the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided; it is not a limit on their power." People v. Patterson, 154 Ill. 2d 414, 468, 610 N.E.2d 16 (1992).

The law of the case doctrine's purpose is "to protect settled expectations of the parties, ensure uniformity of decisions, maintain consistency during the course of a single case, effectuate proper administration of justice, and bring litigation to an end." Petre v. Kucich, 356 Ill. App. 3d 57, 63, 824 N.E.2d 1117 (2005).  The law of the case doctrine is also intended to maintain the prestige of the courts.  Emerson Electric Co. v. Aetna Casualty and Surety Co., 352 Ill. App. 3d 399, 417, 815 N.E.2d 924 (2004).  "[I]f an appellate court issues contrary opinions on the same issue in the same case, its prestige is undercut." Emerson Electric Co., 352 Ill. App. 3d at 417.  "When an appellate court reverses and remands the cause with a specific mandate, the only

1-05-3132

proper issue on a second appeal is whether the trial court's order is in accord with the mandate." Petre, 356 Ill. App. 3d at 63.

There are two recognized exceptions to the law of the case doctrine's application: (1) when a higher reviewing court, subsequent to the lower court's decision, makes a contrary ruling on the same issue; and (2) when a reviewing court finds its prior decision was palpably erroneous. Martin, 268 Ill. App. 3d at 701; Stallman v. Youngquist, 152 Ill. App. 3d 683, 504 N.E.2d 920 (1987).

I. Section 143a-2 of the Insurance Code

National Union contends the Norris I court erroneously held National Union's offer of uninsured motorist benefits to Jones was invalid under section 143a-2 of the Insurance Code.

The 1989 version of section 143a-2(1) of the Insurance Code provides:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State *** unless uninsured motorist coverage as required in Section 143a of this Code is offered in an amount up to the insured's bodily injury limits." Ill. Rev. Stat., 1989, ch. 73, par 755a-2(1).

To satisfy the requirements of section 143a-2 of the Insurance Code, an offer must: (1) notify the insured in a commercially reasonable manner if the offer is not made

in face-to-face negotiations; (2) specify the limits of the optional coverage without using general terms; (3) intelligibly advise the insured of the nature of the offer; and (4) advise the insured that optional coverage is available for a relatively modest premium increase. Cloninger v. National General Insurance Co., 109 Ill. 2d 419, 425-26, 465 N.E.2d 956 (1984). "The remedy for an inadequate offer of uninsured motorist coverage is to increase the existing coverage to limits equal to the bodily injury liability limits of the insured person's policy." Watson v. Hartford Casualty Insurance Co., 205 Ill. App. 3d 88, 95, 562 N.E.2d 1261 (1990).

In this case, the offer form instructed Jones to accept or reject uninsured coverage and informed Jones of the basic limits required in several states, including Illinois. As to Illinois, the form stated the basic limits required $30,000 in coverage. That was incorrect. The Insurance Code required a minimum of $20,000 per person and $40,000 per occurrence. The form also failed to identify how much additional coverage would cost.

Larry E. May, Director of Risk Management for Jones, testified at his deposition and by affidavit that it was Jones' corporate policy to reject uninsured motorist coverage where possible or, alternatively, to carry only the statutorily mandated minimum coverage. May testified at his deposition:

"Q. And I think you answered earlier, I just want to make sure the record is clear. You understood at all times when procuring insurance from National Union that you could purchase uninsured coverage up to your liability limits of $2

million?A. It was my understanding if I wanted it, they probably would sell me anything I was willing to pay for it.

Q. Anything over-

A. Let me add one comment to that. They at all times offered me uninsured and underinsured motorist, and I at all times said no, as I've told you in my initial presentation, I would reject--I do not want uninsured motorist or underinsured motorist to be a part of my program. If it's mandated by law, I will have to have it and you will have to cover it, but at whatever their absolute minimums are. And at that point in time there is no need to talk about, well we can give you $5 million. I am not interested because I don't want it coming out of my pocket."

May did not directly answer the question asked: whether Jones knew National Union could provide it with uninsured motorist coverage up to the $2 million bodily injury policy limit. Nor did May explicitly say the $2 million limits were offered to Jones by National Union. An "offer" is required by section 143a-2(1) of the Insurance Code. Failure to obtain from May a clear statement that the $2 million limit was offered to Jones substantially weakens National Union's case for a finding of palpable error.

In Norris I, the majority held that as a result of the errors on the offer form, considering all presumptions in favor of the insured, it was as if no offer was made. Norris, 326 Ill. App. 3d at 322. The majority held it was "unreasonable to ask a

company or individual to accept or reject coverage that is incorrectly listed on the forms presented." Norris, 326 Ill. App. 3d at 321. While the majority recognized Jones had clearly marked an X in the space for rejecting uninsured motorist coverage, it concluded Jones could not make an informed choice to accept or reject since the offer was not made in a proper manner. Norris, 326 Ill. App. 3d at 322. The dissent, however, believed it was uncontested that National Union offered uninsured motorist coverage to Jones in an amount up to the insured's bodily injury limits. Norris, 326 Ill. App. 3d at 326.

If we are going to apply the palpably erroneous standard, we should endeavor to define it. Few cases do. It comes up when courts are asked to deviate from the law of the case doctrine. See Stallman, 152 Ill. App. 3d at 689. No decision we have found explicitly defines the standard. But we are not without guidance. "Palpable" can be defined.

The Abridged Sixth Edition of Black's Law Dictionary defines palpable as "easily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest." Black's Law Dictionary 767 (6th ed. 1991). In A Dictionary of Modern Legal Usage, Second Edition, palpable is defined as "tangible, apparent." A Dictionary of Modern Legal Usage 635 (2d ed. 1995).

Not many Illinois decisions have applied the palpably erroneous standard to change the law of a specific case. It does happen. It happened in Stallman where the court decided to reconsider the parent-child tort immunity rule. Stallman, 152 Ill. App. 3d at 689. But the decision made it clear the palpably erroneous standard is used only

when the court, in the first instance, remands the case for a new trial on all issues.  On the second appeal, then, the court would actually reach a different decision based on a new and different trial.  Stallman, 152 Ill. App. 3d at 689.  See also Martin, 268 Ill. App. 3d at 701.  That is not what happened in the case before us.  Here, the mandate in Norris I foreclosed a trial on the issues.  There are no new facts concerning coverage limits.  All that remained to be done was to obtain an arbitrator's decision on the amount of recovery.  Norris I did not turn on findings of law.  It analyzed the record to conclude no contested factual issue existed--reformation takes the policy to the $2 million limit.

The other recognized exception to the law of the case doctrine--when a higher reviewing court makes a contrary ruling on the same issue--has not happened to Norris I.  In fact, this court has relied on Norris I to support the proposition that " 'every liability insurance policy issued for any motor vehicle registered or principally garaged in Illinois must provide coverage for bodily injury or death caused by an uninsured or hit-and-run vehicle.' "  Harrington v. American Family Mutual Insurance Co., 332 Ill. App. 3d 385, 392, 773 N.E.2d 98 (2002), quoting Norris, 326 Ill. App. 3d at 321.

We conclude the law of the case doctrine prevents us from revisiting the Norris I reformation ruling.  We reach this conclusion with some reluctance.  Had the judges on this panel decided the issue in the first instance, the result well might have been different.  But this is the second instance, and good legal policy reasons and the factual record compel the result we reach.

The law of the case doctrine, as we read it, applies to all of the issues raised by National Union.  We could move directly to the arbitration issue raised by National

Union, but for the sake of completeness we will address National Union's other two reasons for contending Norris I should not be followed.

II. Exclusive Remedy Provision

National Union contends the Norris I court's decision that the Workers' Compensation Act's exclusivity bar did not prohibit employees and their families from seeking and obtaining uninsured motorist benefits from the employer's insurer was palpably erroneous.

Section 5(a) of the Illinois Workers' Compensation Act (the Act) states, in relevant part, that:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, and service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." (Emphasis Added.) 820 ILCS 305/5(a) (West 2000).

However, section 143a-1 of the Insurance Code, which was passed after the adoption of the Workers' Compensation Act, provides that no policy shall be issued in Illinois unless uninsured motorist coverage is provided up to the statutorily required minimum set forth in section 7-203 of the Illinois Vehicle Code "for the protection of persons insured thereunder who are legally entitled to recover damages from owner or operators of uninsured motor vehicles." Ill. Rev. Stat. 1989, ch. 73, par. 755a-1.

The intent of the legislature in enacting section 143a was to ensure persons injured by an uninsured motorist are protected at least to the extent that compensation is made available to persons injured by a motorist insured for the legal limits. Severs v. County Mutual Insurance Co., 89 Ill. 2d 515, 519, 434 N.E.2d 290 (1982); American Services Inc. v. Pasalka, 363 Ill. App. 3d 385, 390, 842 N.E.2d 1219 (2006). Nothing in the language of the statute excludes its application to employees injured by uninsured motorists during the course of their employment.

In this case, Jones was required to include uninsured motorist benefits up to the statutorily mandated minimum when he purchased his commercial fleet general liability policy from National Union. See Ill. Rev. Stat. 1989, ch. 73, par. 755a-1. Norris, a truck driver employed by Jones, was an intended beneficiary of the statutorily required protection. The injuries that ultimately led to Norris' death were caused by an uninsured third party, not by his employer or a co-employee. As the majority in Norris I noted, nothing in the Act explicitly precludes an employee's recovery of uninsured motorist benefits from the employer's automobile insurer. "The category of third parties liable in tort to an injured employee is conspicuously absent from the language of the Workers'

Compensation Act." Norris, 326 Ill. App. 3d at 323.

We recognize the language "his insurer or his broker to provide safety service, advice or recommendations for the employer" in section 5(a) of the Act has been interpreted to extend immunity beyond workers' compensation carriers to general liability insurers in one distinct area--liability for negligent safety inspections. See Mier v. Staley, 28 Ill. App. 3d 373, 384, 329 N.E.2d 1 (1975) ("In view of the language of the statute, and its legislative history, we hold that the general liability insurer, is immune from suit when the basis alleged is negligent safety inspections.") The apparent purpose of the amendment was to promote industrial safety inspections. Mier, 28 Ill. App. 3d at 385. However, nothing in the legislative history, Illinois case law, or the Act itself suggests the legislature intended to extend immunity to an employer's automobile insurer.

After reviewing the analysis and reasoning of the Norris I court's decision, we agree "the bar contained in section 5(a) does not apply." Norris, 326 Ill. App. 3d at 323.

Although no other Illinois case has considered this precise question, a majority of jurisdictions that have considered the question have reached a similar conclusion. See Elam v. Hartford Insurance Co., 42 S.W.3d 443 (Ark. 2001) ("it is clear that Hartford [employer's automobile insurer] was not the workers' compensation carrier, thus making that extension of the exclusive-remedy statute inapplicable here"); Philadelphia Indemnity Insurance Co. v. Morris, 990 S.W.2d 621, 625 (Ky. 1999) (exclusive remedy provision did not preclude recovery of uninsured motorist benefits because it was

intended only to protect the employer, not its underinsured motorist insurance carrier); Muller v. Tri-State Insurance Co. of Minnesota, 560 N.W.2d 130, 133-34 (Neb. 1997) (exclusive remedy provision protected the employer's insurer in its role as the workers' compensation carrier, not in its roles as employer's underinsured motorist carrier). But see Berger v. H.P. Hood, Inc., 416 Mass. 652, 624 N.E.2d 947 (Mass. 1993); National Union Fire Insurance Co. of Pittsburgh, PA. v. Figaratto, 423 Mass. 346, 667 N.E.2d 877 (Mass. 1996)("An employee injured on the job by an underinsured third person is not permitted to recover UM benefits provided under a standard policy by an employer's motor vehicle insurer.")

National Union contends both Atlantic Mutual Insurance Co. v. Payton, 289 Ill. App. 3d 866, 869, 682 N.E.2d 1144 (1997), and Robertson v. Travelers Insurance Co., 95 Ill. 2d 441, 446-52, 682 N.E.2d 1144 (1983), make clear that the exclusive remedy provision operates in favor of an employer's insurer. National Union focuses on the court's statement in Payton that "the legislature created this exclusive remedy not only for employers and co-employees but also specifically and expressly for insurers." Payton, 289 Ill. App. 3d at 870.

Contrary to National Union's contention, neither Payton nor Robertson applies in this case. In Payton, the court held an employee was not entitled to uninsured motorist benefits from his employer's automobile insurance carrier because the co-employee who caused the injuries was immune from suit under section 5(a) of the Workers' Compensation Act. Payton, 289 Ill. App. 3d at 872-74. The court specifically noted, however, that the case differed from third-party cases, which do not involve employee,

co-employee, and employer relationships.  Payton, 289 Ill. App. 3d at 869.

In Robertson, our supreme court held an employee could not file a common law action for outrageous conduct against his employer's workers' compensation insurer because section 19(k) of the Act provided the exclusive remedy for the unreasonable or vexatious delay in payment of benefits.  Robertson, 95 Ill. 2d at 449-50.  The supreme court did not address whether section 5(a) of the Act granted immunity to an employer's general liability or uninsured motorist carrier.

We therefore find this court's prior decision regarding the applicability of the exclusive remedy provision was not palpably erroneous.  In fact, it was correct.

III. Insurance Policy's Employment Exclusion

National Union contends the Norris I majority erroneously held the insurance policy's employment exclusions violated Illinois public policy.

"[A]n insurance policy is a contract between the insurance company and the policyholder, the benefits of which are determined by the terms of the contract unless the terms are contrary to public policy."  Sulser v. Country Mutual Insurance Co,, 147 Ill. 2d 548, 558, 591 N.E.2d 427 (1992).  When the language of an insurance policy is clear and unambiguous the court will give effect to its terms.  Grevas v. United States Fidelity & Guaranty Co., 152 Ill. 2d 407, 410, 604 N.E.2d 942 (1992).  However, "the purpose underlying a statute cannot be circumvented by the insertion of a contrary or restricting provision in an insurance policy."  Severs, 89 Ill. 2d at 520.

In this case, the insurance policy issued to Jones specifically excludes from coverage "bodily injury" to "[a]n employee of the 'insured' arising out of and in the

course of employment by the 'insured.' " Exclusion three of the policy, entitled "Workers Compensation," also excludes "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or similar law."

In Norris I, the court held the exceptions were unenforceable as a matter of public policy. Norris, 326 Ill. App. 3d at 323. The court held:

> "Logic dictates that a commercial trucking venture
> necessitates the use of employees to drive the trucks. It is
> highly likely that, like the decedent, some employees are
> going to get into traffic accidents with persons other than
> employers or co-employees. *** If the other driver had
> insurance, the Norris plaintiffs would be suing him and his
> insurer and would likely recover. As we have seen, the
> requirement of uninsured motorist coverage is mandated by
> the statute so as to facilitate an injured plaintiff or his or her
> heirs being made whole. In this particular situation, it would
> be both inequitable and against public policy to leave the
> heirs of this dead driver with no remedy." Norris, 326 Ill.
> App. 3d at 323-24.

Although no other Illinois court has considered whether employee or workers' compensation exclusions preclude an employee from recovering uninsured motorist benefits, other jurisdictions that have considered the issue have held the exclusions do

not apply when a negligent third party is at fault.

In Mirales v. Snoderly, 602 S.E.2d 534 (W.Va. 2004), the West Virginia Supreme Court considered whether a workers' compensation exclusion to uninsured motorist coverage in a commercial business auto policy precluded an employee from recovering uninsured motorist benefits for injuries he sustained during the course of his employment as the result of an automobile accident with a negligent third-party. The employee also received worker's compensation benefits. The court concluded the workers' compensation exclusion did not apply because the employee was injured by a third-party tortfeasor, not his employer. Mirales, 602 S.E.2d at 540-41.

The court's conclusion was based on the determination that while an employee may recover workers' compensation benefits for injuries that occurred in the course and scope of his employment, he "is not statutorily barred from also pursuing [his] claims against the third-party as this individual does not enjoy the immunity afforded by the workers' compensation statutes." Mirales, 602 S.E.2d at 540. See also Aetna Casualty & Surety Co. v. McMichael, 906 P.2d 92, 100 (Colo. 1995) (Because the injured employee's claim was based on liability incurred by the third-party driver who caused the accident, the workers' compensation exclusion in the policy did not apply to the employee's uninsured benefits claim.) Neither court concluded the exclusion violated public policy.

In this case, similar to Mirales, decedent was injured by a third-party tortfeasor, not his employer or a co-employee. Since the exclusions in Jones' policy do not specifically refer to uninsured motorist coverage or to injuries caused by a negligent

third party, we might have found a different reason to conclude the exclusions did not prevent plaintiffs' recovery of uninsured motorist benefits. In our opinion the employee and workers' compensation exclusions in Jones' policy simply do not apply to the facts of this case. See Mirales, 602 S.E.2d at 540. In light of the purpose of section 143a-1, however, we cannot say this court's conclusion in Norris I that the exclusions violated public policy was palpably erroneous.

IV. Binding Arbitration

National Union contends the 1989 version of section 143a-1 of the Insurance Code provides for mandatory but non-binding arbitration of uninsured motorist claims. In support, National Union points out that mandatory arbitration and binding arbitration are not always the same. Because the legislature did not use the word "binding" to modify "arbitration," National Union contends the arbitration in this case cannot be read as binding.

Questions of statutory interpretation are issues of law reviewed *de novo*. In re County Collector, 356 Ill. App. 3d 668, 670, 826 N.E.2d 951 (2005). The primary rule in statutory interpretation is to determine and effectuate the intent of the legislature. In re County Collector, 356 Ill. App. 3d at 670. The best indication of legislative intent is the language of the statute. U.S. Bank National Assoc. v. Clark, 216 Ill. 2d 334, 346, 837 N.E.2d 74 (2005). Words in the statute should be construed in context and given their plain and ordinary meaning. In re County Collector, 356 Ill. App. 3d at 670; Clark, 216 Ill. 2d at 346. If the statute's language is clear, extrinsic aids to interpretation are unnecessary. Clark, 216 Ill. 2d at 346; In re County Treasurer and Ex-Officio Collector

of Cook County, 323 Ill. App. 3d 1044, 1049, 753 N.E.2d 363 (2001). Where a term in a statute is ambiguous, use of the term in other parts of the statute or similar statutes can indicate the legislature's intent. In re County Collector, 356 Ill. App. 3d at 670.

Pointing to Illinois Supreme Court Rules 86 through 95, which provide for mandatory but non-binding arbitration, National Union contends arbitration cannot be considered binding unless expressly indicated.

Contrary to National Union's contention, Supreme Court Rules 86 through 95 do not apply to this case. Uninsured motorist claims are arbitrated pursuant to section 143a-1 of the Insurance Code, not Supreme Court Rule 86. See Allstate Insurance Co. v. Fisher, 212 Ill. App. 3d 712, 714-15, 571 N.E.2d 792 (1991) ("The State's insurance code requires automobile policies containing uninsured motorist clauses to provide for arbitration. Ill. Rev. Stat. 1989, ch. 73, par. 755a *et seq.*")

As National Union points out, a mandatory arbitration process has been established in several large urban counties in the State pursuant to Illinois Supreme Court Rule 86. But Supreme Court Rules 86 through 95 apply only where money damages do not exceed the maximum amount established by each judicial circuit. 155 Ill. 2d R. 86(b), (c). The maximum amount in Cook County is $30,000. See Cook Co. Cir. Ct. R. 18.3(b). The arbitration rules do not apply in this case, where the claim made by plaintiffs far exceeds the maximum limit anticipated by the supreme court rules. See State Farm Insurance Co. v. Harmon, 335 Ill. App. 3d 687, 688, 781 N.E.2d 335 (2002).

Section 143a-1 of the Insurance Code provides:

"No policy shall be renewed, delivered, or issued for delivery in this State unless it is provided therein that any dispute with respect to the coverage shall be submitted for arbitration to the American Arbitration Association or for determination in the following manner: Upon the insured requesting arbitration, each party to the dispute shall select an arbitrator and the 2 arbitrators so named shall select a third arbitrator. If such arbitrators are not selected within 45 days from such request, either party may request that the arbitration be submitted to the American Arbitration Association." Ill. Rev. Stat. 1989, ch. 73, par. 755a-1. (now codified, as amended, at 215 ILCS 5/143a-1 (West 2004)).

This court has previously concluded arbitration conducted pursuant to section 143a-1 of the Insurance Code is binding. American Family Mutual Insurance Co. v. Baaske, 213 Ill. App. 3d 683, 572 N.E.2d 308 (1991). While we recognized in Baaske that arbitration is not always binding, we said arbitration is "ordinarily and properly understood to be binding and to be an alternative to or replacement for the judicial resolution of a dispute." Baaske, 213 Ill. App. 3d at 687. For example, while Supreme Court Rules 86 through 95 provide for mandatory arbitration, the rules explicitly state the arbitration is not binding. Baaske, 213 Ill. App. 3d at 687. By contrast, neither the 1989 version of section 143a-1 nor the Insurance Code contains a similar provision.

Baaske, 213 Ill. App. 3d at 687. See also State Farm Fire & Casualty Co. v. Yapejian, 152 Ill. 2d 533, 541, 605 N.E.2d 539 (1992) (purpose of section 143a-1 is to "expedite the processing of uninsured motorist claims"); Brooks v. Cigna Property and Casualty Co., 299 Ill. App. 3d 68, 73, 700 N.E.2d 1052 (1998) ("The Code compels mandatory arbitration of uninsured motorist claims as to liability and damages; these claims cannot be resolved in the judicial forum.")

We see no reason to depart from our prior decisions in Baaske and Brooks. Accordingly, we find mandatory arbitration pursuant to the 1989 version of section 143a-1 of the Insurance Code is binding.                    CONCLUSION

We find this court's rulings in Norris I were not palpably erroneous. We further find the arbitration conducted here was mandatory and binding pursuant to the 1989 version of section 143a-1 of the Insurance Code, as the trial court found.

Affirmed.

HOFFMAN, and SOUTH, JJ., concur.