Rule 23 order filed
June 6, 2022.
Motion to publish garnted
July 7, 2022.

2022 IL App (5th) 160007-B

NO. 5-16-0007

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ENBRIDGE PIPELINES (ILLINOIS), L.L.C., n/k/a | ) | Appeal from the |
| Illinois Extension Pipeline Company, L.L.C., | ) | Circuit Court of |
| | ) | Marion County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14-ED-1 |
| | ) | |
| MARK MURFIN JR., BRENDA MURFIN, | ) | |
| PEOPLES NATIONAL BANK, as Mortgagee, | ) | |
| and NONRECORD CLAIMANTS and | ) | |
| UNKNOWN OWNERS, | ) | Honorable |
| | ) | Stanley M. Brandmeyer, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Presiding Justice Boie[*] and Justice Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Enbridge Pipelines (Illinois), L.L.C., now known as Illinois Extension Pipeline

Company, L.L.C. (IEPC), filed a condemnation action against defendants, Mark and Brenda

Murfin, in the circuit court of Marion County. IEPC's condemnation action sought to acquire

permanent and temporary easement rights over the Murfins' property for the construction,

operation, and maintenance of a liquid petroleum pipeline project known as the Southern Access

Extension (SAX) pipeline. IEPC's condemnation action also sought a determination as to the just

_____

[*]Justice Goldenhersh was originally assigned to participate in this case. Presiding Justice Boie was substituted on the panel subsequent to Justice Goldenhersh's retirement and has read the briefs and listened to the recording of oral argument.

compensation owed to the Murfins for IEPC's easement interests. The Murfins opposed the condemnation action and filed a traverse and motion to dismiss (traverse motion), which the court denied pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)). The matter proceeded to a jury trial on the issue of just compensation, and the court entered judgment on the jury award for just compensation.

¶ 2　　The Murfins appealed, raising various issues that challenged the circuit court's rulings on their traverse motion and certain evidentiary matters. See *Enbridge Pipeline (Illinois), L.L.C. v. Murfin*, 2020 IL App (5th) 160007, ¶ 3. This court vacated the circuit court's denial of the Murfins' traverse motion and remanded with directions for further proceedings. *Id.* ¶ 117.

¶ 3　　On remand, the circuit court denied the traverse motion after holding evidentiary hearings on the issues of good-faith negotiations, public use, and public necessity. Thereafter, the court returned the case to this court to resolve all remaining issues, including issues relating to the court's denial of the traverse motion on remand and the court's prior evidentiary rulings. For the following reasons, we now affirm.

¶ 4　　　　　　　　　　　　I. Background

¶ 5　　The facts of this case were set forth in extensive detail in this court's prior decision. See *Murfin*, 2020 IL App (5th) 160007. Accordingly, we recite only those facts necessary to resolve the remaining issues on appeal.

¶ 6　　　　　　　　　　　　A. ICC Proceedings

¶ 7　　In July 2009, the Illinois Commerce Commission (ICC) granted IEPC's application for a certificate in good standing, authorizing IEPC to operate as a common-carrier-by-pipeline and begin construction of the SAX pipeline. The ICC determined that a public need existed for the pipeline but denied IEPC's request for eminent domain authority at that time, directing IEPC to

continue negotiation efforts with all affected landowners. The Fourth District affirmed the ICC's decision in *Pliura Intervenors v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 199 (2010).[1] The Illinois Supreme Court denied a subsequently filed petition for leave to appeal. See *Pliura Intervenors v. Illinois Commerce Comm'n*, 239 Ill. 2d 589 (2011) (table).

¶ 8    In April 2014, after IEPC negotiated easement agreements for 531 of the 679 tracts, the ICC granted IEPC eminent domain authority to acquire the remaining easement rights needed for construction of the SAX pipeline. The Fourth District subsequently affirmed the ICC's decision in *Pliura Intervenors v. Illinois Commerce Comm'n*, 2015 IL App (4th) 140592-U.

¶ 9    In May 2014, IEPC filed a motion to reopen and amend with the ICC, requesting approval to reduce the diameter of the previously approved SAX pipeline. In December 2014, the ICC granted IEPC's request to reduce the diameter of the SAX pipeline, rejecting the intervenors' arguments that the previously issued certificate expired and that the reduced diameter showed the SAX pipeline was a private project. The Fourth District subsequently affirmed the ICC's decision in *Pliura Intervenors v. Illinois Commerce Comm'n*, 2016 IL App (4th) 150084-U.

¶ 10                                B. Circuit Court Proceedings

¶ 11    On July 9, 2014, IEPC filed a complaint for condemnation against the Murfins, seeking to acquire temporary and permanent easement rights over their property for the construction and operation of the SAX pipeline.[2] The complaint also sought a determination of just compensation for the easement rights and demanded a trial by jury. The complaint alleged that the ICC granted

---

[1]Several affected landowners, represented by two attorneys, intervened in the ICC proceedings and appealed the ICC's decision. The "Pliura Intervenors" were represented by attorney Thomas J. Pliura, who also represented the Murfins in the proceedings at issue in the instant appeal.

[2]IEPC filed the complaint for condemnation against the Murfins after the ICC issued its decision granting IEPC eminent domain authority but before the ICC issued its decision on IEPC's motion requesting approval to reduce the diameter of the SAX pipeline.

IEPC eminent domain authority to obtain easement rights for the construction of the SAX pipeline, and IEPC attached the ICC's prior decisions as exhibits to the complaint. The complaint further alleged that IEPC made unsuccessful attempts to negotiate with the Murfins on an amount of compensation for the easement rights, making it necessary to file the condemnation action. The complaint specifically alleged that IEPC offered to purchase the easement rights from the Murfins for $37,160 on May 22, 2013, and that IEPC presented the Murfins with a final offer of $37,734 on May 19, 2014. IEPC attached the May 19, 2014, final offer letter as an exhibit to the complaint.

¶ 12 On July 28, 2014, the Murfins filed a traverse motion alleging as follows:

"1. That [IEPC] is not properly vested with authority to acquire the property of [the Murfins] by proceeding in eminent domain.

2. That the property sought to be acquired in this proceeding is not necessary or convenient for the purpose for which it is sought to be taken.

3. That the amount of property sought to be taken by [IEPC] herein is in excess of [IEPC's] needs.

4. That [IEPC] does not seek to use the property sought to be acquired by this proceeding for a public purpose.

5. That there has been no bona fide attempt to agree with [the Murfins] as to the just compensation and damages to be paid for the property sought to be taken.

6. That the project for which [IEPC] seeks to acquire the lands of [the Murfins] does not constitute a public convenience or necessity.

7. That the project does not constitute a common carrier because of restrictions on access to the proposed pipeline.

8. That [IEPC's] authority to acquire the property by eminent domain is limited to a project that [IEPC] is no longer pursuing and is not transferable to a new and different project.

9. That [IEPC] does not possess the legal authority to construct the pipeline it intends to construct on the property of [landowners] because it has no certificate in good standing from the [ICC] for the project it is pursuing and the certificate it previously obtained is expired and is not transferable to a different project."

4

¶ 13    On August 22, 2014, IEPC filed a response to the traverse motion, arguing that the motion was legally defective and unsupported. Relying on section 5-5-5(c) of the Eminent Domain Act (Act) (735 ILCS 30/5-5-5(c) (West 2014)), IEPC asserted that the ICC's prior decisions created a rebuttable presumption that the property acquisition was (1) primarily for the benefit, use, or enjoyment of the public and (2) necessary for a public purpose. In addition, IEPC asserted that it negotiated with the Murfins in good faith, where the offers made to all affected landowners for the permanent easements represented 125% of the per acre fee simple value of their respective properties, and the offers made for the temporary easements represented 50% of the per acre fee simple value. IEPC further asserted that it consulted with Joseph Batis, a licensed real estate appraiser, during negotiations and that it relied on Batis's land market study in formulating offers to all affected landowners. IEPC also claimed it relied on Batis's opinion that the offers exceeded the value of the easement rights. In support, IEPC attached affidavits prepared by Batis and John McKay, an IEPC representative responsible for land acquisition.

¶ 14    On March 11, 2015, the circuit court held a hearing on the traverse motion. The court declined to take any evidence, stating that it would treat the hearing "like a 2-619 hearing." Based on its review of the pleadings, motions, and case law submitted by the parties, the court denied the traverse motion, "treated as 2-619 motion."

¶ 15    On June 18, 2015, the Murfins filed an amended counterclaim for damages to the remainder. The amended counterclaim alleged that, in addition to the damages directly suffered from the taking, the Murfins would suffer substantial, irreparable, and unavoidable damage to the remainder of their property due to the "the presence of a hazardous materials pipeline" and "the terms, conditions, safety precautions, access rights, use restrictions, dangers, and stigma" associated with a pipeline. In a subsequent filing, the Murfins declared their intention to provide

5

opinion testimony regarding the value of their property and remainder damages at trial. The Murfins listed the following as bases for their respective opinions: their knowledge of their property and the real estate market in Marion County; their "research into farm and rural residential property sales"; their conversations with real estate brokers and farm managers; their understanding of the risks associated with pipeline easements, including interference with farming operations and damages resulting from the construction process; "the risk inherently created by the presence of oil pipelines, which he has researched"; and "the stigma and fear associated with oil pipelines."

¶ 16    Shortly thereafter, IEPC filed numerous motions *in limine* seeking to bar testimony and exclude evidence relating to, *inter alia*, the following: hydrostatic testing of the pipeline; IEPC's ability to mortgage the easement; and previous pipeline spills, leaks, and accidents. IEPC also sought to bar the Murfins from testifying regarding market value and remainder damage at trial, alleging that they were not experts in valuation and that their opinions were based on speculation.

¶ 17    Prior to trial, the circuit court addressed IEPC's motions *in limine*. The court ruled that certain factors could not be used to establish diminution in value or remainder damages, including IEPC's ability to mortgage the easement interests and the potential for hydrostatic testing. The court also excluded evidence of "generalized" pipeline fears and evidence of previous, unrelated pipeline spills or leaks. IEPC later filed a motion to bar valuation testimony by the Murfins based on such improper factors, and the Murfins ultimately consented to the grant of the motion as it related to limitation of future expansion, internet research, and the possibility of a pipeline rupture.

¶ 18    On July 27, 2015, the case proceeded to a jury trial. Over the course of several days, the parties presented numerous exhibits and testimony from several witnesses. After IEPC presented its case, Brenda Murfin withdrew as a witness and the circuit court allowed a *voir dire* of Mark

6

Murfin. During his *voir dire* testimony, Mark Murfin indicated that his opinion on remainder damage included consideration of "a risk of rupture," future expansions, risks associated with construction, and internet research. The court ruled that it would allow Mark Murfin to testify regarding the value of his property, so long as his testimony was consistent with the court's prior rulings. The court reiterated that he would be "restricted from testifying on issues of damage to the remainder to the property, in the following respects, as testimony relates to: hydrostatic testing ***; internet research *** conversations he may have had with real estate brokers and farm managers; any fears of rupture of the pipeline *** as testimony on such subjects by [Mark Murfin] is inconsistent with the ruling in [*Trunkline Gas Co. v. O'Bryan*, 21 Ill. 2d 95 (1960)]." In doing so, the court found that such factors would prejudice the jury.

¶ 19    Mark Murfin then testified to the value of the property as a whole. IEPC made objections on the grounds that Mark Murfin's proffered damage opinions lacked proper foundation, and the circuit court sustained the objections. Thereafter, no other opinions were elicited from Mark Murfin.

¶ 20    The Murfins next presented the testimony of appraiser Michael McCann, who testified that just compensation for the SAX easements totaled $230,905. The Murfins offered no additional testimony. At the Murfins' request, the jury went on a site view of their property.

¶ 21    During closing arguments, IEPC asked the jury to award the Murfins $9000, while the Murfins asked for an award of $230,905. Following deliberations, the jury returned a verdict in favor of the Murfins in the amount of $59,000. The circuit court subsequently entered a judgment for the Murfins in that amount on July 31, 2015.

¶ 22    On August 28, 2015, the Murfins filed a posttrial motion, asserting that the circuit court erred in several respects during both the preliminary and trial proceedings. Regarding the

7

preliminary proceedings, the Murfins argued that the court erred by (1) treating their traverse motion as a section 2-619 motion to dismiss, (2) ruling that the ICC certificate granted IEPC eminent domain authority, (3) ruling that the SAX pipeline was for a public use or purpose, and (4) ruling that IEPC engaged in good-faith negotiations. Regarding the trial proceedings, the Murfins argued that the court erred by (1) barring Mark Murfin from testifying regarding the risk and fear of pipeline dangers, (2) barring the testimony of two additional witnesses, and (3) restricting cross-examination of IEPC's witnesses regarding the terms of the easement. The court subsequently denied the motion on December 16, 2015, and the Murfins appealed.

¶ 23     On appeal, this court vacated the circuit court's order denying the Murfins' traverse motion and remanded the matter back to the circuit court with instructions for further proceedings. *Murfin*, 2020 IL App (5th) 160007, ¶ 117. Specifically, this court directed the circuit court to conduct a new evidentiary hearing on the Murfins' traverse motion to address issues of good-faith negotiations, public use, and necessity. *Id*. ¶ 109. This court also directed the circuit court to disregard "issues requiring review of the ICC's orders or decisions, including issues raised by [the Murfins'] traverse motion relating to IEPC's legal authority, excess taking, and the validity or expiration of IEPC's certificates." *Id*. This court further directed the circuit court to make detailed findings in support of its determinations. *Id*. ¶¶ 110-11.

¶ 24     In June 2020, following the remand for further proceedings on the traverse motion, the circuit court held an evidentiary hearing on the issue of good-faith negotiations. The evidence adduced at the hearing included, *inter alia*, the following: IEPC's contact notes, which indicated that IEPC contacted the Murfins on approximately 20 occasions in an effort to agree on an amount of compensation for the easement rights; the May 22, 2013, letter IEPC sent the Murfins offering to purchase the easement interests for $37,160, which included a compensation worksheet

explaining how the offer was calculated; the May 19, 2014, letter IEPC sent the Murfins offering to purchase the easement rights for $37,734; and an exchange of e-mails between IEPC representatives and the Murfins' attorney from June 2014, which showed that IEPC offered $138,736 for the easement rights on June 11, 2014.

¶ 25 IEPC also called witnesses to testify at the hearing. McKay testified that IEPC consulted with appraiser Batis and relied on Batis's land market study in formulating offers to all affected landowners. Glen Hass, a former Enbridge employee, testified that the June 11, 2014, offer of $138,736 was "a global offer," which was contingent upon all remaining landowners accepting the offers and agreeing not to file an objection with the ICC.

¶ 26 Batis testified that he worked extensively with IEPC representatives, along with approximately 15 other appraisers, in connection with IEPC's efforts to acquire land in connection with the SAX pipeline. He provided advice to IEPC representatives during negotiations to acquire property for the pipeline project, and he prepared a land market study in accordance with professional standards. Batis knew that IEPC used his land market study to make offers to affected landowners. Batis met with IEPC representatives on April 11, 2013, and he advised the group on the proper methodology for valuing the easements for properties located along the SAX pipeline route. Batis testified that IEPC calculated the offers at 125% of the full fee simple value for permanent easements and 50% of the full fee simple value for temporary easement. In Batis's opinion, the easement rights were worth "far less" than the amounts offered by IEPC.

¶ 27 Mark Murfin also testified on his own behalf at the hearing. He testified that, after reading IEPC's first offer, he understood IEPC based the offer on a professional market analysis of current property values in Marion County. He further understood IEPC's position that the easement interests were of less value than a fee simple interest. He rejected each of IEPC's offers. He

9

rejected IEPC's May 19, 2014, offer because he found it inadequate, and he rejected the June 11, 2014, offer based on the advice of his attorney.

¶ 28   Following the hearing, the circuit court took the matter under advisement. Both parties later submitted written briefs in support of their respective positions.

¶ 29   In July 2020, the circuit court held an evidentiary hearing on the issues of public use and necessity. At the hearing, IEPC presented the ICC's decisions granting IEPC authority to operate as a common-carrier-by-pipeline and granting IEPC eminent domain authority. By agreement of the parties, the court admitted the ICC's decisions into evidence at the hearing.

¶ 30   The Murfins presented the condemnation complaint filed on July 9, 2014, which the circuit court admitted into evidence without objection. The Murfins next presented a document Marathon filed with the United States Security Exchange Commission, which stated that Marathon exercised the option to purchase 35% ownership interest in the SAX pipeline. IEPC objected, arguing that the document was neither certified nor relevant. The court denied admission of the exhibit on the basis that it was not certified.

¶ 31   The Murfins next sought to admit the following exhibits into evidence: IEPC's application for a certificate in good standing; IEPC's petition for eminent domain authority; sworn testimony given by McKay and another IEPC representative during the ICC proceedings; IEPC's motion to reopen and amend the diameter of the SAX pipeline; the ICC's December 17, 2014, order granting IEPC's motion to reduce the diameter of the SAX pipeline; and a confidential document, which was subject to a protective order and under seal by the ICC. IEPC objected to the admission of each exhibit, arguing that the evidence was irrelevant to the limited scope of the traverse hearing. IEPC further argued that it was improper for the circuit court to review the ICC's findings and decisions. The court admitted the exhibits into evidence over IEPC's objection.

10

¶ 32    The Murfins also called Carlisle Kelly, a landowner affected by the SAX pipeline, to testify at the hearing. Kelly testified that he discussed the pipeline with IEPC representatives and conducted his own research on IEPC. Kelly also discussed his findings with Mark Murfin and participated in the ICC proceedings. During Kelly's testimony, IEPC continuously objected on the grounds that his testimony either lacked foundation or was irrelevant. The circuit court ultimately agreed with IEPC and struck Kelly's testimony as irrelevant but allowed the Murfins to make an offer of proof. The Murfins claimed that Kelly would testify regarding the lengthy history of the ICC proceedings and his knowledge that IEPC changed the proposed SAX project from a 36-inch pipeline to a 24-inch pipeline after receiving ICC authorization to use eminent domain authority. According to the Murfins, Kelly's testimony would show that the SAX project was a private project and not primarily for the benefit, use, and enjoyment of the public.

¶ 33    Following the hearing, the circuit court took the matter under advisement. Both parties later submitted briefs in support of their respective positions.

¶ 34    On December 14, 2020, the circuit court entered an eight-page written order, finding that IEPC met its burden of proving it engaged in good-faith negotiations with the Murfins. In its written order, the court provided a detailed review of the evidence it relied on in support of its finding.

¶ 35    On June 24, 2021, the circuit court entered a four-page written order. In the order, the court again found that IEPC met its burden of proving that it engaged in good-faith negotiations with the Murfins. The court next applied the statutory presumption of public use and necessity pursuant to section 5-5-5(c) of the Act (735 ILCS 30/5-5-5(c) (West 2020)), based on evidence of the ICC's decisions authorizing IEPC to operate as a common-carrier-by-pipeline and granting IEPC eminent domain authority. The court further found that the Murfins "failed to offer clear and convincing

11

evidence to rebut the strong presumption that IEPC's efforts are both necessary and beneficial to the public's use and enjoyment." Thus, the court denied the Murfins' traverse motion. Thereafter, the court returned the case to this court to make a final determination on all remaining issues.

¶ 36                                  II. Analysis

¶ 37                               A. Traverse Motion

¶ 38    The Murfins challenge the circuit court's denial of their traverse motion on remand. Specifically, the Murfins argue that the court erred by denying their traverse motion, because (1) the court failed to comply with this court's instruction to include detailed findings in support of its determinations, (2) IEPC failed to show it engaged in good-faith negotiations prior to filing suit, (3) the court improperly applied the statutory presumption in section 5-5-5(c) of the Act, and (4) the court erred by finding that IEPC's interest in their property was primarily for public use and necessary for a public purpose. We address these arguments in turn.

¶ 39    1. Remand Instructions

¶ 40    The Murfins first argue that the circuit court did not comply with this court's remand order. Specifically, the Murfins argue that the court failed to include "detailed findings in support of its determinations." We disagree.

¶ 41    "Because the circuit court has no authority to act beyond the dictates of the appellate court's mandate, the only proper issue on a second appeal from the remand is whether the circuit court's order on remand is in accord with the mandate." *In re Marriage of Jones*, 2019 IL App (5th) 180388, ¶ 24 (citing *Norris v. National Union Fire Insurance Co. of Pittsburgh*, 368 Ill. App. 3d 576, 581 (2006), and *Petre v. Kucich*, 356 Ill. App. 3d 57, 63 (2005)). " 'After a remand, the [circuit] court is required to exercise its discretion within the bounds of the remand. Whether it has done so is a question of law. [Citations.] A reviewing court determines a legal question

12

independently of the [circuit] court's judgment.' " *Id.* (quoting *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351-52 (2002), citing *People v. Williams*, 188 Ill. 2d 365, 369 (1999), and *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996)).

¶ 42     This court directed the circuit court to hold an evidentiary hearing on the Murfins' traverse motion on remand. *Murfin*, 2020 IL App (5th) 160007, ¶ 111. This court also directed the circuit court to "make detailed findings in support of its determinations" on issues relating to that motion. *Id.*

¶ 43     Here, it is undisputed that the circuit court held evidentiary hearings on the issues of good-faith negotiations, public use, and public necessity on remand. After holding the evidentiary hearing on the issue of good-faith negotiations, the court entered an eight-page order finding that IEPC negotiated with the Murfins in good faith prior to commencing suit. The court's order provided a detailed review of the evidence it relied on in making its finding. After the hearing on the issues of public use and necessity, the court entered a four-page written order finding that the Murfins failed to present sufficient evidence "to rebut the strong presumption that IEPC's efforts [were] both necessary and beneficial to the public's use and enjoyment." Based on our review of the court's order, we find the court made sufficient findings in support of its determinations. Thus, we reject the Murfins' argument that the court failed to comply with this court's instructions on remand.

¶ 44     2. Good-Faith Negotiations

¶ 45     The Murfins next argue that the circuit court erred by finding that IEPC engaged in good-faith negotiations. We disagree.

¶ 46     "[T]he Eminent Domain Act requires the condemnor to negotiate with the landowner in good faith over the amount of compensation to be paid before it initiates proceedings to take the

13

landowner's property through eminent domain." *Department of Transportation ex rel. People v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 480 (2004). "Whether a party has acted in good faith is generally a question of fact." *Id*. at 488. Accordingly, "a trial court's finding of good faith, or lack thereof, should not be reversed unless it is against the manifest weight of the evidence." *Id*. (citing *In re Marriage of Barnard*, 283 Ill. App. 3d 366, 370 (1996)). "A trial court's finding is not against the manifest weight of the evidence unless an opposite conclusion is clearly evident." *Id*. (citing *Dynamic Recycling Services, Inc. v. Shred Pax Corp.*, 210 Ill. App. 3d 602, 613 (1991)). In other words, a trial court's decision should be affirmed if the record contains any evidence to support the court's finding. *Id*.

¶ 47    Here, the Murfins do not argue that the circuit court's finding was against the manifest weight of the evidence. Instead, they argue that: "IEPC's pre-suit offers were not based upon a valuation of [their] property because no such valuation occurred until after suit was filed"; the court improperly considered "negotiations between IEPC and [their] attorney from June 3 [to] June 11, 2014"; "IEPC's 'lowball' offer demonstrated a lack of good faith negotiations"; and "IEPC failed to inform [them] of the bases of the final offer." These arguments essentially ask this court to reweigh the evidence and substitute our judgment for that of the circuit court. We decline to do so.

¶ 48    In applying the deferential standard applicable to our review, we cannot say that the circuit court's finding on the issue of good-faith negotiations was against the manifest weight of the evidence. IEPC's contact notes showed that it contacted the Murfins on multiple occasions over the years in an attempt to negotiate a price for the easement rights. IEPC's contact notes also showed that it presented various offers to the Murfins and that the Murfins either rejected the offers or responded with counteroffers. The May 22, 2013, letter showed that IEPC offered to purchase

14

the easement rights from the Murfins for $37,160, and the May 19, 2014, letter showed that IEPC made a final offer to purchase the easement rights from the Murfins for $37,734. Both letters included compensation worksheets explaining how IEPC calculated the offers. Mark Murfin testified that, after reading IEPC's first offer, he understood IEPC based the offer on a professional market analysis of current property values in Marion County. He also testified that he understood IEPC's position that the easement interests were of less value than a fee simple interest. The Murfins rejected each of these offers as inadequate. Thus, contrary to the Murfins' argument, the evidence showed that IEPC informed the Murfins of the bases for the offers.

¶ 49    IEPC also presented evidence showing that it consulted with appraiser Batis and relied on Batis's land market study in formulating its offers to all affected landowners, including the Murfins. Batis testified that he worked extensively with IEPC representatives, along with approximately 15 other appraisers, in connection with IEPC's efforts to acquire land in connection with the SAX pipeline. Batis testified that he advised IEPC during the negotiation process and that he knew IEPC used his land market study to make offers to affected landowners. He also testified that IEPC calculated the offers at 125% of the full fee simple value for permanent easements and 50% of the full fee simple value for temporary easement. In addition, Batis testified that the easement rights were worth "far less" than the amounts offered by IEPC. McKay's testimony corroborated Batis's testimony. Thus, contrary to the Murfins' argument, the evidence showed that IEPC based its offers on the advice of an appraiser.

¶ 50    The Murfins assert that the circuit court failed to address Batis's "contradictory" testimony that he did not offer IEPC advice on calculating offers when he prepared the land market study. However, nothing in the record demonstrates that the court did not consider Batis's "contradictory" testimony in weighing the evidence on the issue of good-faith negotiations. It was within the

15

province of the court to resolve any conflicts in the evidence. Based on the testimonies of Batis and McKay, the court could have reasonably concluded that IEPC based the offers on Batis's advice and land market study.

¶ 51    IEPC also presented evidence showing that it continued to negotiate with the Murfins' attorney via e-mail following the final written offer. An e-mail, dated June 11, 2014, revealed that IEPC presented an offer to the Murfins' attorney, wherein IEPC agreed to pay approximately $138,000 for the permanent and temporary easements over the Murfins' property. Mark Murfin testified that he was aware of the June 11, 2014, offer but rejected the offer based on the advice of his attorney. Thus, the circuit court could have reasonably concluded that the continued negotiation efforts and wide range of offers presented to the Murfins demonstrated good-faith negotiations.

¶ 52    The Murfins, without citation to legal authority, assert that the circuit court improperly considered the June 2014 negotiations, which related to numerous landowners represented by the same attorney as the Murfins. The Murfins claim that the June 11, 2014, offer was contingent on a global settlement, requiring all affected landowners to accept the offers and not to file objections with the ICC. We note, however, that evidence regarding the circumstances surrounding the June 11, 2014, offer was presented at the hearing. In our view, the circumstances and contingencies surrounding the June 2014 negotiations were matters for the court to consider in weighing the evidence. Thus, we reject the Murfins' assertion that the court improperly considered evidence pertaining to the June 2014 negotiations.

¶ 53    In sum, the evidence showed that IEPC made multiple attempts to negotiate with the Murfins prior to filing the condemnation action. From May 2013 to June 2014, IEPC submitted a wide range of offers to the Murfins, all of which the Murfins rejected. From this evidence, the

16

circuit court could have reasonably found that IEPC negotiated with the Murfins in good faith. Thus, we cannot say that the court's finding was against the manifest weight of the evidence.

¶ 54    3. Public Use and Necessity

¶ 55    The Murfins next argue that the circuit court erred by applying the rebuttable presumption under section 5-5-5(c) of the Act. The Murfins also argue that the court erred by finding that IEPC's interest in their property was primarily for public use and necessary for a public purpose. We disagree.

¶ 56    Section 5-5-5(a) of the Act provides that "a condemning authority may not take or damage property by the exercise of the power of eminent domain unless it is for a public use, as set forth in this Section." 735 ILCS 30/5-5-5(a) (West 2014). Section 5-5-5(c) requires a condemning authority seeking to exercise eminent domain authority to acquire property for private ownership or control to prove, by clear and convincing evidence, that the acquisition is "(i) primarily for the benefit, use, or enjoyment of the public and (ii) necessary for a public purpose." *Id.* § 5-5-5(c). Subsection (c) also includes the following provision:

> "Evidence that the [ICC] has granted a certificate or otherwise made a finding of public convenience and necessity for an acquisition of property (or any right or interest in property) for private ownership or control (including, without limitation, an acquisition for which the use of eminent domain is authorized under the Public Utilities Act, the Telephone Company Act, or the Electric Supplier Act) to be used for utility purposes creates a rebuttable presumption that such acquisition of that property (or right or interest in property) is (i) primarily for the benefit, use, or enjoyment of the public and (ii) necessary for a public purpose." *Id.*

"On appeal, a circuit court's ruling on a traverse and motion to dismiss is generally subject to a manifest weight standard of review, while any questions of law or issues of statutory interpretation resolved by the circuit court are reviewed *de novo*." *Illinois State Toll Highway Authority v. South Barrington Office Center*, 2016 IL App (1st) 150960, ¶ 31.

17

¶ 57    Here, IEPC presented evidence of the ICC's decisions authorizing IEPC to operate as a common-carrier-by-pipeline and granting IEPC eminent domain authority. The circuit court admitted the ICC's decisions into evidence at the hearing by agreement of the parties. According to the plain language of section 5-5-5(c), this evidence created the rebuttable presumption of public use and necessity. Thus, the circuit court did not err by applying the statutory presumption.

¶ 58    After applying the statutory presumption, the circuit court complied with this court's instructions and provided the Murfins with an opportunity to present evidence rebutting the presumption. The Murfins attempted to introduce evidence showing that the ICC granted IEPC eminent domain authority for the construction of a larger diameter pipeline and that IEPC sought to use eminent domain authority for the construction of a smaller, private pipeline for Marathon; however, the circuit court properly disregarded such evidence. See *Murfin*, 2020 IL App (5th) 160007, ¶ 109; see also *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2016 IL App (4th) 150519, ¶ 164 (holding, *inter alia*, that landowners could not "litigate anew" issues of whether "the SAX project [was a] common carrier because of restrictions on access," or whether the ICC order granting "eminent-domain authority [applied] to the current SAX pipeline project"). While we sympathize with the Murfins and find their arguments persuasive, such matters are beyond the jurisdiction of both the circuit court and this court. Because the Murfins' evidence pertained to matters outside the limited scope of a traverse hearing, we cannot say that the court erred by finding that the Murfins failed to rebut the presumption of public use and necessity.

¶ 59    To summarize, IEPC presented sufficient evidence to support the circuit court's findings on the issues of good-faith negotiations, public use, and public necessity on remand. Therefore, we hold that the court did not err by denying the traverse motion on remand.

18

¶ 60                           B. Evidentiary Rulings

¶ 61    In their original brief to this court, the Murfins argued that the circuit court erred by denying them the ability to present certain evidence at trial. Specifically, the Murfins argued that the court erred by excluding evidence regarding pipeline dangers and by barring testimony regarding certain rights enumerated by IEPC's easements. We now address these arguments.

¶ 62    "Generally, evidentiary motions, such as motions *in limine*, are directed to the trial court's sound discretion, and reviewing courts will not disturb a trial court's evidentiary rulings absent an abuse of discretion." *Kuerth*, 2016 IL App (4th) 150519, ¶ 90 (citing *In re Leona W.*, 228 Ill. 2d 439, 460 (2008)). " 'The threshold for finding an abuse of discretion is high,' " and " '[a] trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that no reasonable [person] would take the view adopted by the court.' " *Id*. (quoting *Leona W.*, 228 Ill. 2d at 460). "If the trial court commits an abuse of discretion, a new trial should be ordered only if the trial court's ruling appears to have affected the outcome of the trial." *Enbridge Energy, Ltd. Partnership v. Fry*, 2017 IL App (3d) 150765, ¶ 54 (citing *Leona W.*, 228 Ill. 2d at 460). After carefully reviewing the record, we are unable to conclude that the circuit court's evidentiary rulings constituted an abuse of discretion.

¶ 63    1. Pipeline Dangers

¶ 64    The Murfins first argued that the circuit court erred by excluding evidence regarding pipeline dangers at trial. Specifically, the Murfins argued that they should have been allowed to testify regarding the potential stigma of having a pipeline on the property and the potential for a pipeline spill. We disagree.

¶ 65    To recover for damage to land not taken, the damage must be direct and proximate, and "not such as in merely possible or may be conceived by the imagination." *Trunkline Gas Co.*, 21

Ill. 2d at 100. "The mere possibility of a remote and contingent injury, the happening of which is speculative and uncertain, is not an element entering into damage to land not taken." *Id.* Where a witness considered improper elements of damage, his or her testimony will be deemed incompetent, even though in part based upon proper elements. *Id.*

¶ 66 Here, the circuit court properly excluded evidence regarding potential pipeline spills or leaks, including Mark Murfin's opinion testimony based on the stigma and dangers of having a pipeline on his property. Speculative testimony regarding the stigma and dangers of having a pipeline on a property was not a proper element to be considered in determining damage to the remainder of a property. See *id.* (concluding that the speculative possibility of a remote injury that could possibly result from having a pipeline on a property was not a proper element to be considered in determining whether there would be damage to the remainder and that the testimony of a witness who considered such improper element of damage would be deemed incompetent); see also *Fry*, 2017 IL App (3d) 150765, ¶ 56 (concluding that the circuit court properly excluded the landowners' opinion testimony where the landowners considered improper factors in forming their opinions of value, including the possible stigma of having a pipeline on the property and the potential for a pipeline spill). Thus, we conclude that the court did not abuse its discretion by excluding evidence regarding pipeline dangers.

¶ 67 2. Easement Rights

¶ 68 The Murfins next argued that the circuit court erred by barring testimony regarding certain rights enumerated in IEPC's easement. Specifically, the Murfins argued that the court erred by denying them the opportunity to cross-examine IEPC's witnesses regarding IEPC's right to mortgage the easement and IEPC's right to perform pipeline maintenance. We disagree.

20

¶ 69    A nearly identical argument was rejected by the Third District in *Fry*, 2017 IL App (3d) 150765, ¶ 55. In addressing the landowners' argument that circuit court erred by denying them the ability to cross-examine IEPC's valuation witness as to IEPC's easement rights, the Third District noted, *inter alia*, that "any temporary interference with access to the easement area could not, under the law, cause damage to the remainder property." *Id*. (citing *Trunkline Gas Co.*, 21 Ill. 2d at 100-01). The Third District further noted that it would not have been proper "to allow the landowners to suggest to the jury in cross-examination that there were potential negative consequences that could result if Enbridge obtained an easement on the mortgage when the landowners had no evidence whatsoever to suggest that those negative consequences could or would occur." *Id*. (citing *Department of Public Works & Buildings v. Mitchell*, 9 Ill. App. 3d 120, 123-34 (1973)).

¶ 70    As noted, the Murfins' arguments here closely mirror those rejected by the Third District in *Fry*. We conclude, as did the Third District in *Fry*, that such evidence is speculative and improper. Thus, we hold that the circuit court did not abuse its discretion by barring testimony regarding IEPC's easement rights.

¶ 71                                    III. Conclusion

¶ 72    For the reasons stated, we affirm the Marion County circuit court's denial of the traverse motion on remand, and we affirm the prior judgment of the court setting the amount of just compensation.


¶ 73    Affirmed.

**No. 5-16-0007**

| | |
|---|---|
| **Cite as:** | *Enbridge Pipelines (Illinois), L.L.C., etc. v. Murfin, Mark, Jr., et al.*, 2022 IL App (5th) 160007-B |
| **Decision Under Review:** | Appeal from the Circuit Court of Marion County, No. 14-ED-1; the Hon. Stanley M. Brandmeyer, Judge, presiding. |
| **Attorney for Appellant:** | Thomas J. Pliura, of LeRoy, IL, for appellant. |
| **Attorneys for Appellee:** | John M. Spesia and Jacob E. Gancarczyk of Joliet, IL, for appellees. |